UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles A. BLANDINA,
Defendant–Appellant.

No. 87–3120.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1988.

Decided July 12, 1989.

Thomas W. Turner, Orlando, Fla., for appellant.

Robert C. Perry, Indianapolis, Ind., for appellee.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant Charles A. Blandina appeals his conviction on two counts of income tax evasion for the years 1983 and 1984 in violation of 26 U.S.C. § 7201. We affirm.

## I. FACTS

Defendant Blandina was the owner of the State Liquors package store in Indianapolis, Indiana. He purchased the package store in the fall of 1983 for a price of $108,203.40, $94,203.40 of which he paid in cash.[1] An Internal Revenue Service ("IRS") task force investigating large cash transactions at that time became aware of Blandina's sizeable cash downpayment, and, after reviewing Blandina's 1983 tax return in which he reported taxable income of only $66,190.00, decided that a criminal investigation into Blandina's financial affairs was warranted, assigning Agent Charles Vonderschmitt to conduct the investigation.

During the course of the criminal investigation, Agent Vonderschmitt analyzed Blandina's expenses and purchases of assets, such as real estate and automobiles, examined bank records, and reviewed probate records to determine, among other things, the amount he inherited from his father, who died in 1979. Vonderschmitt interviewed Blandina in April 1985, informing him that he had been assigned to investigate the discrepancy between his stated taxable income and the large amount of cash he used to purchase the package store. Blandina told Vonderschmitt that he had a cash hoard from two sources of non-taxable income which were not reflected on his tax returns. First, Blandina stated that in 1979 his father gave him a large amount of cash resulting from the investment of a $19,000 settlement for injuries Blandina sustained in a 1958 car accident. Blandina stated that he hid the cash in a basement bathroom in his stepmother's house. Blandina also stated that prior to the death of his father, he received his father's coin collection. Vonderschmitt investigated both of these "leads" into possible sources of cash and determined that neither could be verified.

Blandina was indicted in the Southern District of Indiana on February 18, 1987, on two counts of income tax evasion for the years 1983 and 1984. The indictment charged Blandina with understating his 1983 income by $103,291.20 and his 1984 income by $162,164.83, resulting in a total tax deficiency of $103,923.41. The trial was originally scheduled for April 27, 1987, but was continued to June 15, 1987, on motion of the defendant. Prior to the rescheduled court date, the parties engaged in extensive discovery culminating on June 5 when the defendant delivered to the government the remnants of his alleged coin collection given to him by his late father, an appraisal of the remaining coins in the collection, as well as the statement of a defense witness who was scheduled to testify about accompanying Blandina when he sold portions of the collection to various coin dealers in Bloomington, Indiana, and Chicago, Illinois.

Based on its obligation to investigate all leads reasonably susceptible of being checked which might establish Blandina's non-taxable sources of income,[2] the government, on June 8, filed a motion to continue the trial for another 90 days. Over Blandina's objection, the trial court granted the government's motion on June 10 and set the trial for September 8, 1987. On June 11, 1987, the defendant filed a motion asking the court to reconsider its continuation of the case, requesting a hearing on the matter, and petitioning the court for an order to compel the government to provide the defense with various statements of prosecution witnesses under the Jencks Act, 18 U.S.C. § 3500.

---

1. Blandina tendered the remaining $14,000 of the purchase price in the form of a cashier's check.

2. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), discussed in Sections II and V, infra.

The court conducted a hearing and after considering the defendant's objections to the continuance based on the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, reaffirmed its previous decision to continue the trial until September 8. The court specifically found that the defendant would not be prejudiced by the continuance and that the interests of justice and judicial economy would be served by granting the government sufficient time to comply with its obligation to investigate Blandina's alleged sources of non-taxable income. The court also found that the defendant was not entitled to the Jencks material requested until one week prior to trial. The defendant renewed his opposition to the continuance in a motion to dismiss filed on September 4, which the court denied based on its findings at the hearing on the motion to reconsider.

On September 7, the day prior to the scheduled trial date, the government informed defense counsel that it planned to call Richard Aaron as a government witness for the purpose of eliciting testimony concerning marijuana transactions between Aaron and Blandina in 1984. Jury selection began on September 8, but due to a problem in the selection procedure, the jury was discharged and the trial was rescheduled for September 15. On September 10, the defendant orally requested a 90–day continuance in light of the damaging testimony the government planned to elicit from Aaron. The court held a hearing on this motion and offered the defendant two alternate trial dates: October 5, 1987, or November 9, 1987, both of which defense counsel rejected due to scheduling conflicts. The court then denied the motion and trial commenced on September 15.

At trial, the government used the net worth method of proving that Blandina willfully understated his taxable income for the years 1983 and 1984.

"In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported for that year, the government claims the excess represents unreported taxable income."

*Holland v. United States,* 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150 (1954). The government's summary expert, IRS Agent Robert Bennett, concluded that Blandina's net worth on December 31, 1982, was $50,074.00, none of which was attributable to cash on hand. The government then presented numerous witnesses and exhibits regarding Blandina's expenditures during 1983 and 1984. The government also presented the testimony of Richard Aaron, who stated that he had delivered 30 to 40 pounds of marijuana to Blandina on two occasions in 1984. Aaron stated that Blandina paid for the first delivery in cash at a price of $300 to $400 a pound, but returned the second quantity of marijuana without paying for it because it was unacceptable, being of inferior quality. Based on this evidence, the government concluded that Blandina had taxable income of $159,434.25 in 1983, and $105,439.46 in 1984. Because Blandina reported income of $66,190.00 in 1983, and a loss of $8,978.00 in 1984, the government alleged that Blandina owed $74,965.35 in unpaid taxes.

Blandina did not dispute the government's summary of his expenditures during 1983 and 1984; rather, he attacked the accuracy of the opening net worth figure, arguing that Agent Bennett failed to give him credit for a "cash hoard" in existence prior to the years in question. Blandina claimed that this "cash hoard" consisted of proceeds from the accident settlement which his father initially invested and later turned over to him, as well as the proceeds from the sale of his father's coin collection.

Although members of Blandina's family testified as to the existence of the accident settlement, no one could testify as to the amount or what became of the proceeds. With regard to the coin collection, defense witness Beth Greene, Blandina's former girlfriend, testified that just prior to the death of the defendant's father, he received several boxes of coins and that she accompanied him when he sold some of the coins for cash.

The government attempted to rebut Greene's testimony with the testimony of IRS Agent Vonderschmitt. Vonderschmitt stated that after he received the remnants of the alleged coin collection during pre-trial discovery, he and other members of his staff interviewed 61 coin dealers from Indianapolis, Indiana, Bloomington, Indiana, and Chicago, Illinois, and that none of the coin dealers had purchased coins from Blandina and one, Rolland Kontak, had actually sold coins to him. Kontak, a coin dealer from Indianapolis, testified that sometime after 1984, he sold Blandina a roll of twenty silver dollars which were included in the group of coins which the defendant had represented to the government as the remnants of his father's coin collection. The government also called Paul Edmonds, another coin dealer from Indianapolis, as a witness. Edmonds testified that although he had never dealt with the defendant, he recognized various coins in the purported collection as coins he had in his own collection until sometime after 1981—two years after Blandina's father passed away.

The jury convicted Blandina on both counts, returning a verdict of guilty on September 25, 1987. On December 15, 1987, the court sentenced Blandina to two years' imprisonment on Count One (1983) and three years' probation on Count Two (1984). On appeal, the defendant argues that his conviction should be reversed because: (1) the district court erred in denying Blandina's motion to dismiss based on violations of his rights under the Speedy Trial Act; (2) the district court abused its discretion in denying his motion for continuance; (3) the district court abused its discretion in admitting (a) the testimony of

Richard Aaron regarding marijuana transactions between Aaron and Blandina, and (b) the testimony of IRS Agent Vonderschmitt concerning his conversations with various coin dealers during his investigation of Blandina's coin collection; and (4) the government failed to present sufficient evidence to establish tax evasion under the net worth method of proof.

## II. SPEEDY TRIAL ACT

■ Blandina initially contends that the district court erred in refusing to dismiss his case pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*

"The Speedy Trial Act generally requires that trials in criminal cases commence within 70 days of the filing date of the information or indictment, or from the date of initial appearance, whichever last occurs. 18 U.S.C. § 3161(c)(1). However, the Act provides that several periods of time may be excluded from this 70-day period. 18 U.S.C. § 3161(h). Among the permitted exclusions is delay 'resulting from a continuance granted ... on the basis of ... findings that the ends of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial.' 18 U.S.C. § 3161(h)(8)(A)."

*United States v. Vega,* 860 F.2d 779, 786 (7th Cir.1988). The main thrust of the defendant's argument under the Speedy Trial Act is that the district court improperly granted the government's motion for a 90-day continuance to further investigate Blandina's sources of non-taxable income and excluded the delay from the 70-day period allowable under the Act. At the outset we note that Blandina's burden on this issue is indeed a heavy one. As we stated in *Vega:* " 'The decision to grant a continuance under the Speedy Trial Act, and [the] accompanying decision to exclude the delay under [§ 3161](h)(8)(A) is addressed to the discretion of the trial court. To obtain a reversal of the court's decision a defendant must show actual prejudice.' " 860 F.2d at 787 (quoting *United States v. Tedesco,* 726 F.2d 1216, 1221 (7th Cir. 1984)).

Initially, we hasten to point out that the defendant has failed to make the required showing of actual prejudice due to the delay resulting from the continuance. Further, our review of the record reveals that at the time the government filed its motion for continuance, the trial was scheduled to commence on June 15, 1987. The evidence upon which the government premised its motion—namely, remnants of Blandina's coin collection, an appraisal thereof and the statement of a defense witness who planned to testify about the collection—was not presented to the government until June 5, 1987, and then only in response to a court order mandating the defendant's production of this material. Thus, the government would have had only 10 days to complete the investigation of this evidence, which was directly relevant to the defendant's contention that he had accumulated a "cash hoard" from, among other things, the sale of his late father's coin collection—a potential source of non-taxable income the government was required to investigate under *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Based on these factors, the district court concluded:

> "The information concerning possible non-taxable income having been peculiarly within the knowledge of the Defendant until being delivered to counsel for the Government on June 5, 1987, and an investigation of same being necessary for a full and truthful factfinding during trial, the court finds that the Motion is made consistent with judicial economy and is premised on Defendant's right to a speedy and just trial. It appears, therefore, that a continuance is mandated to ensure a speedy and just trial."

Order of June 10, 1987, at 2. In light of the defendant's delay in providing the government with this information and the government's investigatory obligations under *Holland*, which notably resulted in a two-state investigation of coin dealers and other witnesses, we are convinced that the district court did not abuse its discretion in granting the continuance and excluding the resulting delay from the Speedy Trial Act's 70–day time period. Accordingly, we hold that the defendant's rights under the Speedy Trial Act were not violated and thus, the district court's refusal to dismiss the case based thereunder was proper.

## III. DENIAL OF MOTION FOR CONTINUANCE

Blandina's second allegation of error is that the district court improperly denied his motion for a continuance, which he filed on September 10, 1987, after being notified on September 7 that the government intended to elicit testimony from Richard Aaron regarding marijuana transactions occurring between Aaron and Blandina in 1984. As noted above, this court will overturn a trial court's disposition of a motion to continue only for an abuse of discretion and a showing of actual prejudice. *See Vega, supra. See also United States v. Rodgers*, 755 F.2d 533, 539–40 (7th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). Nonetheless, Blandina argues that in view of the limited time he had to prepare a rebuttal to Aaron's damaging testimony, coupled with the trial court's grant of the government's motion to continue based on a need to investigate the evidence pertaining to his "cash hoard" defense, the trial court did in fact abuse its discretion in this instance. We disagree.

This court has previously stated that the factors listed in *United States v. Uptain*, 531 F.2d 1281 (5th Cir.1976), are "highly relevant" when a trial court considers a motion for a continuance based on an allegation of insufficient time to prepare a defense. *See United States v. Zambrana*, 841 F.2d 1320, 1327 (7th Cir.1988). The *Uptain* court stated:

> "We have deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution."

531 F.2d at 1286 (footnotes omitted).

Upon reviewing the trial court's denial of Blandina's motion to continue in

light of these factors, we are of the opinion that the denial was proper. First, the defendant had eight days before the trial commenced on September 15, 1987, to prepare a rebuttal to Aaron's testimony. It is also important to note that Aaron did not actually testify until September 21, 1987; thus, Blandina had an additional 6 days of preparation time (14 days total) before the jury heard Aaron's testimony. Second, although Aaron's testimony was no doubt damaging to Blandina, any prejudice resulting solely from the denial of the continuance motion is, at best, speculative. Further, our review of the record reveals that defense counsel had an opportunity to, and did, extensively cross-examine Aaron regarding his association with the defendant, his recollection of the marijuana transactions, his other drug dealings, and his plea agreement with the government. Finally, the court conducted a hearing on Blandina's motion and offered him two alternate trial dates: October 5, 1987, and November 9, 1987, both of which defense counsel rejected. Although it appears from the record that defense counsel had plausible reasons for rejecting both dates, the fact remains that it was the defense who rejected the trial court's attempt to accommodate their request.

Finally, we reject Blandina's contention that the trial court improperly denied his motion for an adjournment based on the fact that the court previously granted a similar motion filed by the government. Blandina's argument overlooks the fact that the district court granted the government's motion based on its *obligation* under *Holland, supra,* to investigate Blandina's evidence pertaining to possible sources of non-taxable income. This contention also overlooks the fact that the trial court had previously granted Blandina's motion for continuance to conduct further discovery filed on April 13, 1987. In light of these facts, particularly the defendant's rejection of the two alternate trial dates offered by the court as well as his previous adjournment, we hold that the district judge was well within his broad discretion in denying Blandina's motion to again continue the trial.

## IV. EVIDENTIARY ERRORS

Blandina next contends that the trial court committed reversible error in admitting the testimony of Richard Aaron regarding marijuana transactions between Aaron and Blandina and the testimony of IRS Agent Vonderschmitt concerning his discussions with various coin dealers about Blandina and his alleged coin collection. Specifically, Blandina alleges that Aaron's testimony was evidence of acts other than those charged in the indictment which were inadmissible because its prejudicial effect greatly outweighed its probative value. With regard to Agent Vonderschmitt's testimony, Blandina argues that it was hearsay not admissible under any of the exceptions to the hearsay rule. Blandina carries a heavy burden in challenging a trial court's evidentiary rulings. As we stated in *United States v. Kaden,* 819 F.2d 813, 818 (7th Cir.1987): "[A] reviewing court gives special deference to the evidentiary rulings of the trial court. We shall only overrule such rulings on a showing that the trial court has abused its discretion."

### A.

■ Blandina initially challenges the district court's admission of Richard Aaron's testimony. Aaron stated that in 1984 he sold between 30 and 40 pounds of marijuana to Blandina on credit. Approximately one week later, Blandina paid Aaron a price of $300 to $400 a pound for the marijuana. Aaron also stated that he delivered another 30 to 40 pounds of marijuana to Blandina, but Blandina returned it to him approximately one month later because it was of inferior quality for resale. Blandina argues that this testimony is evidence of "other acts" not charged in the indictment. The admission of "other acts" evidence is governed by Fed.R.Evid. 404(b), which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes,

such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Further, in order to be admissible under Rule 404(b), evidence of "other acts" must satisfy the following four-part test:

"(1) The evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) The evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) The evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

*United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989).

However, we agree with the government's contention that Rule 404(b) and its corresponding four-part test are not applicable to Aaron's testimony. Aaron's marijuana transactions with Blandina are directly related to the question of Blandina's likely sources of taxable income—one of the core issues at trial, not an act collateral to those charged in the indictment. Thus, the proper inquiry is whether the evidence is relevant to the tax evasion charges, and, if relevant, whether Fed.R.Evid. 403 bars the admission of Aaron's testimony because its probative value is "substantially outweighed by the danger of unfair prejudice."

In a net worth tax evasion prosecution the government is required to prove a likely source of income or negate all non-taxable sources of income. *Holland, supra.* A defendant's possession of a controlled substance in a quantity sufficient for resale is relevant and admissible to show a likely source of income. *United States v. Chu*, 779 F.2d 356, 366 (7th Cir.1985). Thus, under *Chu* Aaron's testimony concerning Blandina's purchase of 30 to 40 pounds of marijuana—a quantity sufficient for resale—is clearly relevant in this case.

Relevant evidence is not inadmissible under Rule 403 unless its probative value is substantially outweighed by the danger of unfair prejudice. The fact that evidence is prejudicial or damaging to the defendant does not of itself classify the evidence as inadmissible. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985). Indeed, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979).

The trial transcript reflects that the trial judge conducted a hearing outside the presence of the jury in which Aaron testified about his marijuana transactions with Blandina. Only after the judge had determined that Aaron was a credible witness did he permit Aaron to testify in the presence of the jury. Further, immediately after the jury heard Aaron's testimony, the trial judge carefully instructed the jury as follows:

"You just heard a witness, Richard Aaron, testify that he sold marijuana to the defendant, Charles Blandina. This testimony concerns things that happened outside what is charged in the indictment. As you are aware, the indictment has to do with two charges of evading taxes in 1983 and 1984. I would like to remind you at this point that this evidence should be considered only so far as it goes to show law violations pertaining the indictment which we have here under consideration. No consideration should be given by the jury as to whether the defendant is guilty of violating any other criminal law. Such would be improper and unduly prejudicial to the defendant."

We are convinced that the trial judge's preliminary finding regarding Aaron's credibility combined with his cautionary instruction immediately following Aaron's testimony abated any possible unfair prejudicial effect Aaron's testimony might have had on the jury's decision-making process. Absent evidence to the contrary, "[w]e make the crucial and valid assumption the jurors carefully follow instructions given them by the court." *United States v.*

*Stern,* 858 F.2d 1241, 1250 (7th Cir.1988). Accordingly, we hold that the district court did not abuse its discretion in admitting Aaron's testimony.

### B.

Blandina also contends that the district court improperly admitted the testimony of Agent Vonderschmitt relating the results of his interviews with various coin dealers regarding Blandina's alleged coin collection because the testimony was hearsay. Under Fed.R.Evid. 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

During his testimony Agent Vonderschmitt stated that after Blandina delivered the alleged remnants of the coin collection to the government, he and other IRS agents commenced an investigation of the collection. Regarding their investigation, Agent Vonderschmitt testified as follows:

"Q. What ... did you do in response to that coin collection being turned over to you?

A. I and several agents from our office interviewed—contacted and interviewed 61 coin dealers from Indianapolis, Bloomington and dealers from Chicago.

Q. Did you attend any coin shows to accomplish that?

A. Yes, we attended coin shows in Indianapolis on two successive weekends.

Q. And what were you doing at those coin shows and [sic] coin dealers?

A. We were showing them photographs of the coins, and also showed them a photograph of Mr. Blandina's face.

Q. Did you find anyone who had sold coins—or pardon me, bought coins from Charles Blandina?

A. No."

The defendant argues that this testimony was offered to establish that Blandina never sold coins to any coin dealers in Indianapolis, Bloomington or Chicago, thus con-tradicting Beth Greene's testimony that she accompanied Blandina when he sold some of the coins at a gun shop in Bloomington and at various coin shops in Chicago. As such, the defendant contends, this testimony is hearsay, and was improperly admitted by the district court. We disagree. The trial transcript reveals that Agent Vonderschmitt made the statements to which the defendant objects in the context of his testimony regarding his attempt to verify the leads on Blandina's coin collection—an investigation he was obligated to make under *Holland, supra.* The results of Vonderschmitt's investigation of the coin collection were within his personal knowledge, which is independent of the truth of the coin dealers' statements concerning their lack of familiarity with Blandina or his coins. As one commentator aptly stated:

"It is hard to prove a negative. If someone ... conducts a fruitless investigation, he may, of course, testify that he did not find whoever or whatever he was looking for. But the significance of this testimony depends on the thoroughness of the investigation. To whom did the witness make inquiry? What responses did he get?

The responses that the witness received would be hearsay if offered to prove their truth. But the theory here is that the responses are offered, not for their truth, but only to prove how diligent the investigation was, so that the trier of fact can determine how much weight to place on the negative results."

D. Binder, *Hearsay Handbook* 466 (2d. ed. 1983). It is clear that the coin dealers' negative responses to Vonderschmitt's question concerning whether they had ever dealt with Blandina were offered not to prove the truth of the responses; rather, they were offered only as evidence of Agent Vonderschmitt's diligence in investigating Blandina's allegations and the negative results of his investigation. Because Vonderschmitt's testimony was not offered to prove the truth of the coin dealers' statements, but rather only to establish that he had conducted a most thorough investigation and the results thereof, the testimony

is not subject to a hearsay objection under Fed.R.Evid. 801. Thus, we hold that the trial court did not abuse its discretion in admitting in evidence Vonderschmitt's testimony concerning the results of his investigation.

## V. SUFFICIENCY OF THE EVIDENCE

Blandina's final argument on appeal is that the government's evidence at trial was insufficient to support a conviction for tax evasion under the net worth method of proof. The standard for reviewing challenges to the sufficiency of the evidence is well established. We must determine "whether, after reviewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Chu*, 779 F.2d 356, 361 (7th Cir.1985).

■ As noted above, the government employed the net worth method of proof during its investigation of the defendant. In *Chu* this court set forth three elements the government must establish under the net worth method. First, the government must establish with reasonable certainty " 'an opening net worth to serve as a starting point from which to calculate future increases in the taxpayer's assets.' " 779 F.2d at 361 (quoting *Holland*, 348 U.S. at 132, 75 S.Ct. at 134). Second, the government must demonstrate that it investigated all " 'relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence.' " 779 F.2d at 365 (quoting *Holland*, 348 U.S. at 135–36, 75 S.Ct. at 135). Finally, the government must establish " '[e]ither a "likely source" of the illegally unreported income represented by the calculated increase in net worth plus non-deductible expenditures in the year in question ... or all possible sources of non-taxable income must be negated.' " 779 F.2d at 366 (quoting *United States v. Grasso*, 629 F.2d 805, 808 (2d Cir.1980)). Blandina challenges the

government's opening net worth figure because he was given no credit for cash on hand. Further, the defendant contends that the government failed to prove a likely source of income because it did not attempt to audit the records from Blandina's liquor store and construction business.

Although cash on hand in an opening net worth figure is "only one of several and varied financial assets and is of no greater significance, aside from its liquidity, than other assets," *United States v. Goldstein*, 685 F.2d 179, 181 (7th Cir.1982), it is of increased importance in this case because the defendant's primary defense at trial was that he had accumulated a substantial amount of cash—the alleged "cash hoard" —prior to the years under investigation. "While the source and existence of cash-on-hand need not be proved with mathematical exactitude, the amount must be established with reasonable certainty." *United States v. Terrell*, 754 F.2d 1139, 1146 (5th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 635 (1985).

■ At trial, the government presented and the trial court allowed IRS Agent Robert Bennett to testify as an expert witness regarding the government's calculations of Blandina's income, expenditures and cash on hand. Bennett testified that in his opinion the defendant had virtually no cash on hand for the years 1980 through 1984. He based his conclusion on the following facts: Carol Smith, a witness for the government, testified that she lived with the defendant from 1979 through 1984 and that there were not large sums of money available; Blandina's former landlord testified that the defendant was continually late in making his rental payments and was eventually evicted from his apartment in September 1981; and Blandina took out two small loans during this time period. Agent Bennett stated that these attributes were inconsistent with those of someone with a large amount of cash on hand. Bennett also performed a cash flow analysis of the defendant for the years 1980, 1981 and 1982—the three years immediately preceding the tax years under investigation— demonstrating that all of Blandina's avail-

able income for those years would have been consumed for the assets the government proved Blandina acquired and the living expenses he incurred, thus leaving no extra cash available to accumulate during these years. Further, IRS Agent Vonderschmitt testified that when he interviewed Blandina in April of 1985, Blandina told him that he did not let his money sit around, he made it work for him by investing it—a statement directly contradicting Blandina's assertions at trial that he maintained a "cash hoard" prior to 1983.

Blandina's only challenges to Bennett's conclusion that he had no cash on hand prior to 1983 are his allegations that he received the proceeds from the accident settlement which his father invested and later turned over to him and that he had excess cash from the sale of his father's coin collection. Blandina presented neither bank records nor deposit statements concerning the accident settlement, nor did he present any receipts from the sale of coins. Moreover, Agent Vonderschmitt testified that he investigated Blandina's alleged sources of cash and determined that neither could be verified. Specifically, Vonderschmitt asked Shelby Federal Savings and Loan in Indianapolis—the institution where Blandina's father allegedly invested the accident settlement proceeds—to determine whether any member of the Blandina family had an interest-bearing account in 1977 or 1978—the two years prior to when Blandina stated he received the sum of money resulting from the invested settlement proceeds. The bank located only two accounts, and neither of them were large enough to represent the proceeds from the alleged $19,000 settlement—the amount of the settlement according to Blandina. Vonderschmitt thereafter interviewed Blandina's mother, stepmother, and brother, none of whom could corroborate Blandina's representation as to the $19,000 settlement figure.

With regard to the coin collection, Vonderschmitt's initial investigation revealed that Blandina failed to file a gift tax return after the alleged receipt of the coin collection. Finally, probate records revealed that the coin collection was not listed as an asset of the estate of Blandina's father. Vonderschmitt's subsequent investigation after the remnants of the coin collection were obtained from the defendant included interviews with 61 coin dealers from Indianapolis, Bloomington and Chicago, none of whom could recall purchasing coins from the defendant. More importantly, Vonderschmitt discovered one coin dealer during his investigation, Rolland Kontak, who testified under oath that he recognized coins represented by Blandina to be part of his father's collection as coins he sold to the defendant sometime after 1984. Vonderschmitt found a second coin dealer, Paul Edmonds, who testified that although he never engaged in coin transactions with Blandina, he recognized coins among the purported remnants of Blandina's collection as coins he kept in his own collection until sometime after 1981—two years *after* Blandina allegedly obtained the collection from his father.

The government's meticulous analysis of Blandina's income and expenditures, coupled with the overwhelming proof rebutting Blandina's claimed sources of cash on hand, when viewed in the light most favorable to the government, convince us that a rational trier of fact could reasonably conclude that Blandina had no cash on hand from 1980 to 1984. Because Blandina challenges the government's opening net worth figure only in the sense that it erroneously concluded that he had no cash on hand, our analysis need go no further. Thus, we hold that the opening net worth figure was established with the required degree of certainty beyond a reasonable doubt.

■ Blandina next argues that the government failed to establish a likely source of income because it failed to audit the records of his liquor store as required under the Supreme Court's opinion in *Holland, supra.* We need not be long detained with this contention. This court has previously stated that "[t]he court in *Holland* limited the scope of the government's required investigation to 'relevant leads *furnished by the taxpayer*—leads reasonably susceptible of being checked.'" *Chu,* 779 F.2d at 365 (emphasis added and cita-

tion omitted). The defendant concedes that when Agent Vonderschmitt asked him for his business records, he refused to supply them based on his fifth amendment right against self-incrimination. Thus, the business records were not a lead furnished by the taxpayer, a prerequisite under *Chu* to requiring a governmental investigation. Blandina contends that the government should have subpoenaed the business records despite his refusal to turn them over to the government. Our research reveals no such requirement. In addition, such a requirement would directly contradict the Supreme Court's clear and unambiguous language in *Holland.* The defendant has no one to blame but himself for the government's failure to examine his business records. As we stated in *United States v. Marrinson,* another tax evasion case also prosecuted under the net worth method: "The defendant, of course, has a right to remain silent, but in these circumstances he assumes some risk by doing so." 832 F.2d 1465, 1473 (7th Cir.1987). The jury obviously determined that the government agents exhausted all reasonably verifiable leads furnished them by Blandina. In light of Blandina's refusal to cooperate with the investigating agents, we refuse to set aside that determination. Thus, we hold that the government fulfilled its obligation to investigate all relevant leads concerning a likely source of income furnished by the defendant that were reasonably susceptible of being checked.

## VI. CONCLUSION

The defendant's arguments in favor of reversing his conviction are without merit. The district court properly granted the government's motion for continuance and excluded the delay from the 70–day time period under the Speedy Trial Act based on the government's obligations under *Holland* to investigate Blandina's evidence regarding his coin collection. Next, the court did not abuse it discretion in denying the defendant's motion to continue based on the proposed testimony of Richard Aaron. Defense counsel rejected both of the alternate trial dates which the court offered and, in any case, the defense had two weeks to prepare for Aaron's testimony. Nor did the court err in admitting both Aaron's testimony and the testimony of Agent Vonderschmitt into evidence. Aaron's testimony regarding his marijuana transactions with the defendant was directly relevant to one of the core issues at trial—namely, whether Blandina's drug dealings were a likely source of unreported taxable income during the years in question. Further, Vonderschmitt's testimony regarding his interviews with the coin dealers was not inadmissible hearsay as the defendant contends; rather, the trial court properly admitted it to show the diligence and results of the investigation of Blandina's coin collection. Finally, Blandina's challenges to the sufficiency of the evidence are unconvincing. The evidence supported the government's conclusion that no part of Blandina's opening net worth was attributable to cash on hand. Moreover, the government was not required to investigate Blandina's business records because Blandina explicitly refused to provide them during the government's investigation. Accordingly, the judgment of the district court is

AFFIRMED.