**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eddie WOODS, also known as Loren Bryant, Defendant–Appellant.**

**No. 92–3070.**

United States Court of Appeals,
Seventh Circuit.

Argued May 7, 1993.

Decided June 7, 1993.

Andrew B. Baker, Jr., Ronald J. Kurpiers (argued), Asst. U.S. Attys., Dyer, IN, for U.S.

John S. Dull (argued), Dull & Duggan, Merrillville, IN, for Eddie Woods.

Before BAUER, Chief Judge, CUMMINGS, and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

After a two day trial, a jury convicted Eddie Woods, also known as Loren Bryant,[1]

---

1. It is unclear from the record which name is the defendant's legal one. He told police and his co-conspirators that his name is Woods. The moth-er of his children knows him as Bryant. Both parties use Bryant in their appellate briefs, so we will refer to him as Bryant.

with (1) conspiracy to distribute cocaine, 21 U.S.C. § 846, (2) two counts of distribution of cocaine, 21 U.S.C. § 841(a)(1), (3) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and (4) using or carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). Bryant was sentenced to ninety months imprisonment and three years of supervised release. He appeals. For the following reasons, we affirm.

## I. Facts

Bryant was arrested after a Drug Enforcement Administration ("DEA") raid of a crack house at 2075 Roosevelt Place in Gary, Indiana on February 12, 1992. The raid yielded 24 grams of crack cocaine, approximately $2000 cash, and a loaded handgun. DEA agents found Bryant crouched in a closet with a package of crack cocaine at his feet, and the cash stuffed in his pockets. Trial Transcript ("Trial Tr.") at 144–45, 181. The gun was lying on a living-room table. Bryant was arrested and charged with possession of cocaine with intent to distribute. The Government filed a superseding indictment on May 14, 1992 which charged Bryant with four additional drug-related offenses. On May 20, 1992, Bryant filed a motion to continue his trial, which was scheduled for May 26, 1992. Record Document ("R. Doc.") 41. The district court denied the motion. After a two-day trial, a jury convicted Bryant of all counts charged. Bryant raises three claims on appeal: (1) the district court abused its discretion in failing to hold an evidentiary hearing on his motion to suppress the evidence seized in the search of 2075 Roosevelt; (2) the district court committed reversible error in refusing to grant his motion for continuance; and (3) the Government did not prove beyond a reasonable doubt that he used or carried a firearm during a drug trafficking crime.

## II. Analysis

### A. Motion to Suppress

Bryant argues that the district court abused its discretion by refusing to hold an evidentiary hearing on his motion to suppress. Bryant contended that the search warrant for the raid was invalid because the Affidavit for Search Warrant submitted by DEA Agent Peter Hojnicki was dated after the search was conducted. The search was conducted on February 12, and the warrant and affidavit bear the handwritten date February 14, although both were date stamped February 11, 1992. Bryant argued that the handwritten dates illustrate that the warrant to search 2075 Roosevelt Place, Gary, Indiana was invalid. Because the warrant was invalid, he contended, all evidence seized in the search should have been suppressed.

Assistant United States Attorney Ronald J. Kurpiers, II, filed a sworn affidavit stating he was present when the warrant application and affidavit were presented to the Magistrate. R.Doc. 16. Kurpiers stated that the supporting affidavit and application were signed and executed before Magistrate Andrew P. Rodovich on February 11, 1989, when the warrant was issued. *Id.* He asserts that all the documents were date stamped "February 11, 1992" with the Magistrate's number, and the handwritten "February 14" date was simply a scrivener's error.

The district court denied Bryant's motion to suppress without a hearing. *See* Order, R.Doc. 18. The court found that no factual dispute existed because Bryant offered nothing to refute the government's verified explanation of the inconsistency. *Id.*

A trial court is required to grant a suppression hearing only when a defendant presents facts justifying relief. *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986). A defendant who requests a hearing bears the burden of showing that there are disputed issues of material fact. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir.1992); *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir.1988) (citing *Nechy v. United States*, 665 F.2d 775, 776 (7th Cir. 1981)), *cert. denied sub nom., Slaughter v. United States*, 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989). Bryant has failed to carry this burden—he merely pointed to the handwritten dates on the warrant and application and demanded a hearing. He has not responded in any way to the Government's explanation of the inconsistency. Without

more, he is not entitled to a hearing; he has failed to show that a genuine factual dispute exists. The district court did not abuse its discretion, and we agree with its conclusion that this "is a trivial matter." Order, R.Doc. 18.

### B. Motion for Continuance

At the final pretrial conference on May 14, 1992, the Government filed a superseding indictment which included four new charges against Bryant: two counts of distribution of cocaine, one count of conspiracy to distribute cocaine, and possession of a firearm during the commission of a drug trafficking offense. Bryant moved to continue the trial, which was set for May 26, 1992, to allow more time to prepare a defense. The motion was denied. Bryant asserts that the court's refusal to grant his motion denied his Sixth Amendment right to assistance of counsel.

In appealing the denial of the motion to continue, Bryant carries a heavy burden. The district court has broad discretion to grant or deny continuances. *United States v. Withers*, 972 F.2d 837, 845 (7th Cir.1992). "Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983). In order to establish that the district court abused its discretion, Bryant must show the denial was "arbitrary, and that actual prejudice resulted from the district court's decision." *Withers*, 972 F.2d at 845 (citing *United States v. Turk*, 870 F.2d 1304, 1307 (7th Cir.1989)). We examine all the circumstances presented, including counsel's performance at trial and the reasons for continuance presented to the district court, to determine whether the denial of a continuance prejudiced the defendant. *United States v. Rasmussen*, 881 F.2d 395, 400 (7th Cir.1989).

Bryant requested and received a continuance on April 8, 1992. *See* R.Docs. 22, 23. The Government filed the superseding indictment on May 14, 1992, and Bryant moved for a second continuance on May 20, 1992, six days before trial. The district court denied the motion immediately. R.Doc. 42. In the motion, Bryant's counsel alleged that he did not have sufficient time to prepare for trial because (1) he needed to hire an audiologist [2] to review the tape recordings made by a DEA informant of cocaine purchases from Bryant because Bryant denied that his voice was on the tapes; and (2) he needed to obtain and review the transcripts of criminal proceedings involving two Government witnesses. R.Doc. 41. On appeal, he provides two additional reasons: the time was inadequate because Government witnesses were not available to depose or examine, and the personnel and medical records of Government witness Jerry Lewis were not available until after the trial commenced.

At the outset, we note that Bryant waited a week after the superseding indictment was filed to request a continuance. He provides no explanation for this delay. *See United States v. Rasmussen*, 881 F.2d 395, 397 (7th Cir.1989) (delay in filing motion considered in review of denial of continuance). We have examined the trial transcript and the record. None of Bryant's reasons support his contention that the district court abused its discretion in denying the second continuance. We shall examine them in reverse order, starting with those he presents on appeal. The record shows that Lewis' records were not subpoenaed until the afternoon of May 23, 1992, the Friday preceding the commencement of trial on May 26, 1992. Trial Tr. at 164. Further, the records contained nothing of use or relevance to Bryant's defense. *Id.* at 165–169. The tardy production of these records could not have prejudiced Bryant's defense. Next, a criminal defendant, absent extraordinary circumstances, *see* Fed.R.Crim.P. 15, is not entitled to depose or examine Government witnesses before trial. Certainly, those circumstances are not presented here, and there is nothing in the record to reflect any attempt to demonstrate them. The Government complied

---

**2.** An audiologist studies hearing defects and their treatment. *See* American Heritage Dictionary 141 (2d ed. 1991). We assume the use of this term is merely an error by counsel, who intended to retain a voice identification expert.

with Bryant's requests for *Brady*[3] and Jencks Act[4] materials, and with his request for documents under Fed.R.Crim.P. 16. Trial Tr. at 14–16. Bryant identifies no materials in the Government's possession which he failed to obtain because of the denial of the motion for continuance. Accordingly, this assertion is also without merit.

The two justifications Bryant argued in his motion to the district court also fail to show actual prejudice from the denial of the continuance. The Government did not introduce the tape recorded cocaine sales or rely upon them in any way. The lack of expert analysis of the voices on the recordings could have had no effect on the outcome of trial. Finally, Bryant contended that he needed to review the criminal proceedings of two government witnesses, Walter Shoulders and Kenneth Brooks. He never requested transcripts of either proceeding and Brooks did not testify at trial. Shoulders did testify, and the trial transcript illustrates that Bryant's counsel examined him thoroughly. *See* Trial Tr. at 251–55. Counsel fully explored Shoulders' cooperation with the DEA, including the reduction of his state court charges. Counsel even probed Shoulders about his mother's health (she suffers from multiple sclerosis), and his theft from her of $4000. *Id.* at 254.

The mere possibility that some additional evidence could have been obtained before trial is insufficient to overcome our deference to the district court. *United States v. Knorr*, 942 F.2d 1217, 1222 (7th Cir.1991). Counsel's performance shows no signs of inadequate preparation or undue time pressure. Bryant has failed to show that the denial of his motion for a continuance prejudiced his defense, or indeed, affected it in any way. We believe the twelve days were adequate, particularly because the original and subsequent charges had the same factual predicate. *Cf. United States v. Blandina*, 895 F.2d 293, 297 (7th Cir.1989) (eight days adequate to prepare for trial to rebut unfavora-

ble testimony); *United States v. Studley*, 892 F.2d 518, 521 (7th Cir.1989) (seven days adequate for appointed counsel who previously served as standby counsel to prepare for trial); *United States v. Rodgers*, 755 F.2d 533, 538–39 (7th Cir.) (four days adequate when counsel was aware of time limitation before accepting representation), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985).

## C. Use of Firearm During Drug Trafficking Offense

Bryant was convicted of using a firearm (a Taurus PT 99 automatic pistol) during a drug trafficking crime, which subjects him to an additional five-year term of imprisonment. 18 U.S.C. § 924(c). Bryant challenges the sufficiency of the evidence supporting this conviction. We review all the evidence in the light most favorable to the Government. If we find that a rational jury could have found the defendant guilty, the conviction will be affirmed. *United States v. Jewel*, 947 F.2d 224, 231 (7th Cir.1991). The government must prove two elements to secure a conviction under § 924(c)(1): (1) that the defendant *used or carried* the firearm, and (2) that this use or carrying was *during and in relation* to a drug trafficking offense. *United States v. Garrett*, 903 F.2d 1105, 1111 (7th Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). When the DEA searched the residence at 2075 Roosevelt, they found the PT 99 on a table in the living room. Trial Tr. at 146. They found Bryant in a bedroom closet with $2,000 cash stuffed in his pockets and a plastic bag full of crack cocaine at his feet. *Id.* at 144, 181. Kenneth Banks, the owner of the home, and three women were also inside the house. Trial Tr. at 148–49.

Jerry Lewis,[5] a confidential informant for the DEA, testified that he made controlled purchases of cocaine from Bryant on February 6 and 8, 1992 (four days before the raid),

3. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires the Government to disclose any evidence helpful to the defense.

4. The Jencks Act, 18 U.S.C. § 3500, allows the defense to obtain through discovery prior state-

ments of government witnesses for purposes of cross-examination.

5. Not the well-known comedic actor and Labor Day telethon host.

at 2075 Roosevelt Place. During the second transaction, Bryant was the only person present, and the sale was completed in the living room. Trial Tr. at 224–26. Shoulders, a co-conspirator, testified that he had been recruited from Detroit, Michigan to sell cocaine for someone named J.R. *Id.* at 233–34. In October 1991, J.R. assigned Shoulders to sell cocaine at a crack house at 1212 Johnson Street in Gary, Indiana. *Id.* J.R. periodically dropped by the house to pick up cash and drop off cocaine. J.R. also instructed Shoulders to swap cocaine for guns whenever possible. *Id.* at 237. After a week, Shoulders was transferred to another house at 1609 Jefferson in Gary. During his tenure there, Shoulders swapped $60 in cocaine for a Taurus PT 99 pistol. *Id.* at 239. This was the only pistol of that type which he obtained. *Id.* at 241. He gave the pistol to J.R. The next time he saw the gun, Bryant was carrying it. *Id.* When J.R. left town, Bryant supervised operations. J.R. took Bryant's more-compact .38 with him, and gave Bryant the PT 99.[6] Trial Tr. at 243, 246. Shoulders testified that whenever someone knocked on the door of one of J.R.'s houses, everyone drew their weapons because of the high risk of robbery. *Id.* at 242.

After his stint on Jefferson, Shoulders was assigned to 2075 Roosevelt Place to sell cocaine. During late November 1991, Bryant stayed with Shoulders periodically. Bryant prepared crack from powdered cocaine and kept all J.R.'s crack houses supplied. *Id.* at 244. Shoulders testified that every time he saw Bryant, Bryant carried the PT 99 on his hip inside his pants. *Id.* at 244. A reasonable jury could conclude, based on this testimony, that Bryant used the PT 99 during his drug trafficking activities.

Because the gun was not found on his person during the raid, and because other people were present in the house at 2075 Roosevelt, Bryant argues the evidence is insufficient to show that he used or carried it. "The 'uses or carries' requirement of section 924(c) . . . does not require that the weapons must be found on or near the defendant." *United States v. Malin*, 908 F.2d 163, 168

(7th Cir.1990), *cert. denied*, 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). Dealers who keep guns "in strategic proximity" to their drugs or transactions 'use them in relation to' their drug trafficking for purposes of the statute. *Id.* See, *e.g., United States v. Vasquez*, 909 F.2d 235, 237 (7th Cir.1990) (defendant stored drugs in car in garage; three handguns stuffed in trunk with narcotics were "used" by defendant), *cert. denied*, —— U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991); *United States v. Rosado*, 866 F.2d 967, 969–970 (7th Cir.) (defendant "used" gun left in jacket in his car while he conducted drug transaction 30 feet away), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989).

Based on Shoulders' testimony, the jury could have found that the PT 99 belonged to Bryant rather than the other occupants of the house. This finding is not undermined by Bryant's decision to leave the gun in the living room when he hid from the DEA. After all, there were indications that a raid was in progress—the agents threw a smoke bomb through a window and used a battering ram to get through the front door. Trial Tr. at 153. (The residence was equipped with an armored security door, complete with six dead-bolt locks. *Id.* at 249.) Moreover, Shoulders and McKenzie testified that Bryant always carried a gun with him during drug transactions. Shoulders stated that J.R.'s salesmen drew their weapons whenever someone knocked at the door. Carrying a gun to protect drugs or money constitutes "use" under § 924(c)(1). "[T]he Government is only obliged to show that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking; a showing that the weapon was used, handled or brandished in an affirmative manner is not required." *United States v. Cooper*, 942 F.2d 1200, 1207 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992). *See also United States v. Bafia*, 949 F.2d 1465, 1476 (7th Cir.1991) (gun in gym bag carried during meetings with dealers and when transporting cash was "used" for purposes of

---

**6.** Malcom McKenzie, a Government witness who worked with Bryant at the 1609 Jefferson crack house, testified that Bryant carried a .38 caliber during drug transactions. Trial Tr. at 214.

§ 924(c)(1)), *cert. denied sub nom., Kerridan v. United States,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992). Bryant has failed to show that no rational jury could find that he used a firearm in relation to his drug trafficking. His conviction stands.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.