134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis BOLDUC, Defendant-Appellant.
 No. 97-2183.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1997.
Decided Jan. 15, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied April 14, 1998.
 
 Before CUMMINGS, ESCHBACH, and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 In 1991, Francis Bolduc and his codefendant, Francis Larkin, were convicted by a jury of one count of armed bank robbery and one count of attempted armed bank robbery in violation of 18 U.S.C. § 2113(a),(d). The armed bank robbery took place on October 18, 1989, at the First Wisconsin Bank in Milwaukee, Wisconsin. The attempted armed bank robbery was at the First Wisconsin Bank of Southgate, in Greenfield, Wisconsin, on June 28, 1988. Bolduc and Larkin were also convicted of two counts of using a firearm in relation to a violent crime. 18 U.S.C. § 924(c)(1). The district court sentenced Bolduc to 580 months' imprisonment and this Court affirmed. United States v. Larkin, 978 F.2d 964 (7th Cir.1992), cert. denied, 510 U.S. 913 (1993). In 1993, Bolduc filed a motion for a new trial based on newly discovered evidence involving an alleged Brady violation. Fed.R.Crim.P. 33. The district court denied Bolduc's motion for a new trial and Bolduc appeals.
 
 
 2
 Bolduc filed a motion for a new trial contending that the government purposely withheld a report containing material exculpatory evidence, i.e., possible alibi evidence, in violation of his due process rights under Brady v. Maryland, 373 U.S. 83, 87 (1963). After Bolduc filed his motion for a new trial, the district court appointed new counsel and scheduled an evidentiary hearing to resolve Bolduc's claim. The four-day evidentiary hearing revealed that a report existed regarding information involving suspects of a 1988 attempted bank robbery at Southridge Shopping Center. The report (Wichgers Report) memorializes a telephone conversation that Greenfield, Wisconsin, Police Detective Dirk Wichgers had with ATF Agent Brad Hays about two individuals that had bragged about attempting to rob a bank. The Wichgers Report was made part of the Greenfield Police Department's investigation file concerning the 1988 attempted bank robbery.
 
 
 3
 After talking to Agent Hays, Detective Wichgers contacted the Federal Bureau of Investigation, which was investigating a 1988 attempted robbery of the First Wisconsin Bank, Southgate Branch. At the hearing, Detective Wichgers testified that he talked about the 1988 attempted robbery investigation with FBI Agent Daniel Craft on the phone. However, Agent Craft testified that he cannot recall receiving any information from Detective Wichgers. An investigator hired by Bolduc's codefendant testified that he had independently obtained the Greenfield police file, including the Wichgers Report, a few weeks before Bolduc's and Larkin's jury trial. Agent Craft testified that immediately prior to the date of the jury trial he was aware that Larkin's investigator had acquired the Greenfield Police Department's entire investigative file concerning the 1988 attempted robbery. Agent Craft testified, however, that he did not look at the investigative file, having only examined the Wichgers Report after the trial.
 
 
 4
 The Assistant United States Attorney in charge of the Bolduc case, Stephen Liccione, testified that he had not seen the Wichgers Report until 1992 or 1993, over a year after the jury trial had concluded. He also testified that he turned over all police reports in his possession to Bolduc's attorney prior to trial. Bolduc testified that he was anonymously mailed the Wichgers Report after he was convicted and incarcerated.
 
 
 5
 After the hearing, the district court found that Bolduc did not satisfy the requirements of a Rule 33 motion based on an alleged Brady violation. First, the district court found that the Wichgers Report was available to Bolduc prior to trial through the exercise of due diligence. The district court also determined that the government did not suppress the Wichgers Report. Next, the court concluded that the Wichgers Report was not admissible as evidence because it was hearsay, and thus, not material. Last, the court determined that even if the Wichgers Report had been admitted it would not have affected the verdict or lead to an acquittal in the event of a new trial due to the overwhelming trial testimony. Thus, the district court denied Bolduc's motion for a new trial.
 
 
 6
 On appeal, Bolduc characterizes his claim as two separate claims--one based on newly discovered evidence and one based on a Brady violation. However, these claims are premised on the same evidence, the Wichgers Report, and the legal analysis overlaps; therefore, Bolduc's assertion is examined as one claim. See United States v. Gonzalez, 93 F.3d 311, 315 (7th Cir.1996). We approach motions for new trials with caution, not second-guessing the judge's and jury's determinations. Id. at 315. If a defendant relies on newly discovered evidence as his basis for a motion for a new trial, the defendant must establish that the evidence: (1) came to his knowledge after the trial; (2) could not have been discovered earlier by using due diligence; (3) is material, not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial. Id. Because Bolduc bases his newly discovered evidence claim on allegedly suppressed exculpatory evidence, this court also examines whether a Brady violation has occurred. See id. at 315-16. In order to successfully mount a Brady challenge, a defendant must establish that the prosecution knew of the exculpatory information, yet suppressed it, and that the evidence is material to the defense, i.e., that a reasonable probability exists that the disclosure of the information to the defendant would have changed the result of the trial. United States v. Earnest, No. 97-1222, slip op. at 6, 9 (7th Cir. Nov. 14, 1997).
 
 
 7
 The government does not refute Bolduc's assertion that he did not know about the Wichgers Report until after his conviction and incarceration. However, the government contends and the district court concluded that Bolduc has not established that he could not have found the Wichgers Report through the exercise of due diligence. The facts reveal that Bolduc's codefendant obtained the Greenfield Police investigation file, including the Wichgers Report, a few weeks prior to the trial date via a private investigator. Bolduc, however, maintains that he exercised due diligence but was misled by the prosecutor based on the prosecutor's silence regarding the Greenfield Police investigation fie. Because of the prosecutor's alleged silence, Bolduc argues that he believed the Greenfield police had not compiled a file on the 1988 attempted robbery.
 
 
 8
 Bolduc's assertions are speculative and not supported by the record. As this court has recently stated, the government does not have the burden to seek information not in its possession of which it is unaware. Earnest, No. 97-1222, slip op. at 6. Bolduc cannot obtain a new trial by contending that the government did not conduct a proper criminal investigation for him. See United States v. Morris. 80 F.3d 1151, 1170 (7th Cir.), cert. denied, 117 S.Ct. 181 (1996). In sum, not only did Bolduc's codefendant obtain the Wichgers report a few weeks prior to trial, but the prosecution's silence as to the Wichgers Report was not an indication that they were withholding known information from Bolduc. Therefore, the Wichgers Report was available to Bolduc before his trial and Bolduc has not established that he exercised due diligence to discover the report.
 
 
 9
 Bolduc also argues that the prosecution suppressed the Wichgers Report; an argument the district court rejected. Based on Giglio v. United States, 405 U.S. 150, 153 (1972), Bolduc asserts that whether the nondisclosure of the Wichgers Report was a result of negligence or design, the prosecution has the responsibility of disclosing such information. In Giglio, the defendant claimed a due process deprivation, arguing that the prosecution failed to disclose a promise made to the defendant's coconspirator that he would not be prosecuted if he testified for the prosecution. Id. at 150-51. The issue addressed was whether an Assistant United States Attorney's promise to the coconspirator implicated the entire United States Attorney's Office. Id. at 153-54. In this context, the Supreme Court concluded that a promise made by one prosecutor is imputed to the entire United States Attorney's Office. Id. at 154. The Court articulated that whether the attorney's nondisclosure of the promise was a result of negligence or by design, the prosecutor's office was responsible. Id. The Assistant United States Attorney in charge of Bolduc's case had no knowledge of the Wichgers Report nor is there evidence that anyone at the United States Attorney's Office for the Eastern District of Wisconsin knew of the Wichgers Report. The facts also indicate that the federal prosecutor provided Bolduc with all of the local police reports available to him. Also, there is no factual basis that the government affirmatively represented that the Wichgers Report did not exist. Therefore, the United States Attorney's Office had no "institutional" knowledge of the Wichgers Report.
 
 
 10
 Bolduc also cites Smith v. Fairman, 769 F.2d 386, 391 (7th Cir.1985), for the proposition that a state prosecutor's ignorance of a police report does not justify the government's failure to produce it. In Fairman, we concluded that the due process inquiry under Brady does not involve a good faith or bad faith analysis of the prosecutor. Id. Instead, a constitutional error under Brady involves the character of the evidence. Id. Bolduc also relies upon Kyles v. Whitley, 514 U.S. 419, 437 (1995), in support of his assertion that the prosecution must learn of favorable evidence known to others acting on the government's behalf, including the police. However, we have concluded that neither Kyles nor Fairman imposes a duty on the prosecutor's office to learn of information possessed by other government agencies that are not involved with the investigation or prosecution at issue. Morris, 80 F.3d at 1169. In fact, we have recently stated that the obligation to disclose Brady material is limited to information of which the government is aware. See Earnest, No. 97-1222, slip op. at 6.
 
 
 11
 The government contended and the district court agreed that the Wichgers Report is not material because it is hearsay, and thus, would be inadmissible at Bolduc's previous or possible new trial. United States v. Silva, 71 F.3d 667, 670 (7th Cir.1995). The Wichgers Report memorializes Detective Wichgers's conversation with ATF Agent Hays about Agent Hays's discussion with an informant regarding possible suspects of the 1988 attempted bank robbery. The report indicates that in 1989 Agent Hays was contacted by an informant who stated that he had heard two people bragging about an attempted robbery. The informant thought the men stated that it was a bank at the Southridge Shopping Center in Greendale, Wisconsin, and that it happened in the summer.
 
 
 12
 Bolduc cites to a Seventh Circuit case in arguing that the Wichgers Report was not proffered for the truth of the matter asserted, and thus, is not hearsay. See United States v. Blandina, 895 F.2d 293, 300-301 (7th Cir.1989) (IRS Agent's testimony was not proffered to contradict a defense witnesses' testimony, but as evidence to support that the agent conducted a thorough investigation). Bolduc, however, also asserts that the Wichgers Report contains materially exculpatory evidence. Bolduc alleges that the Wichgers Report reveals that someone else committed the attempted bank robbery--the very core of his defense theory. Therefore, the Wichgers Report is hearsay because it goes to the truth of the matter asserted. See Fed.R.Evid. 801(c); United States v. Severson, 49 F.3d 268, 271 (7th Cir.1995). Bolduc offers no exceptions to the hearsay rule which might apply to the report and indeed there are none. See Fed.R.Evid. 801(d)(1), 803, 804. Therefore, the Wichgers Report would be inadmissible.
 
 
 13
 Last, to successfully establish a Brady violation, the evidence must be material in view of whether a reasonable probability exists that the disclosure of the information to the defendant would have changed the result of the trial. See Earnest, No. 97-1222, slip op. at 6, 9. A reasonable probability of a different result is established when the suppression of the evidence "undermines confidence in the outcome of the trial." Kyles, 514 U.S. at 534 (citing United States v. Bagley, 473 U.S. 667, 678 (1985)). Here the district court concluded that due to the overwhelming trial testimony of identification witnesses, the Wichgers Report would not have affected the verdict or led to an acquittal in the event of a new trial. The record establishes that Bolduc's jury trial lasted a week and included witnesses who were bank employees present during the robberies. These witnesses identified Bolduc and his codefendant as the perpetrators. Bolduc's trial counsel indicated that he introduced a number of alibi witnesses and crossed-examined the government witnesses in order to make the jury question Bolduc's identification, which apparently failed. Thus there is no indication that nondisclosure of the Wichgers Report would have undermined the confidence in the verdict. Instead, there is ample, independent corroborating evidence of Bolduc's guilt; therefore, there was no reasonable probability that Bolduc's trial would have been different had the Wichgers Report been introduced.
 
 
 14
 After reviewing the record including the undisclosed Wichgers Report, we conclude that the district court did not abuse its discretion in denying Bolduc's motion for a new trial, especially in light of the immateriality of the report. See Gonzalez, 93 F.3d at 315. Therefore, the district court judgment is AFFIRMED.