**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rafael LEIVA and Jorge Rodriquez,**
**Defendants–Appellants.**

**Nos. 90–1883, 90–1904.**

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1991.

Decided March 26, 1992.

Rehearing Denied May 26, 1992.

**638**

Brenda Atkinson, Criminal Div., Barry R. Elden, Jerome N. Krulewitch, argued, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, Ill., for the U.S.

Sam Adam, Chicago, Ill., for Jorge Rodriquez.

Reemberto Diaz, argued, Diaz & Batista, Hialeah, Fla., for Rafael Leiva.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury found Rafael Leiva and Jorge Rodriquez guilty of attempting to possess thirty kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Pursuant to the Sentencing Guidelines, the district judge sentenced Leiva to a term of 188 months imprisonment and Rodriquez to a term of 235 months. Leiva and Rodriquez raise several challenges to their convictions, and, alternatively, argue that the district judge erred in applying the Sentencing Guidelines.

## I.

On June 27, 1989, two government informants, Alvaro Marin and Juan Castro, met with Leiva at his video store in Miami, Florida, and offered to sell him thirty kilograms of cocaine. Marin told Leiva that each kilogram would cost $14,500, making the total price $430,000, payable upon delivery in Chicago. Leiva told Marin that he would raise the money necessary to pay for the cocaine with proceeds he expected to receive from the sale of thirty kilograms of cocaine he had already distributed to customers in Chicago.

On July 6, Leiva and Rodriquez, who brought with them approximately $145,000 in cash, flew to Chicago together with Marin and Castro. When they arrived, they were met by Agent Jose Olivier of the Federal Bureau of Investigation, who posed as Marin's driver and associate. Agent Olivier drove Rodriquez, Leiva and Marin to an apartment in Chicago. During the trip, Rodriquez and Leiva agreed to initially pay Marin $200–300,000 and promised to pay the balance after receiving the cocaine.

Two days later, Marin went to the apartment where Leiva and Rodriquez were staying to complete the transaction. Leiva and Rodriquez told Marin that they had $145,000 as a down payment. Marin reminded them that they would still owe him $290,000.

Marin then gave Leiva one of the packaged kilograms of cocaine. Leiva cut the package to determine the quality of the cocaine, and showed Marin a bag which FBI agents later determined contained $145,000 in cash. The transaction was not completed, however, because Leiva and Rodriquez were not satisfied with the cocaine, telling Marin that it was "shiny" and "loose." They then asked Marin to allow them to examine the other twenty-eight kilograms. Marin agreed and with Rodriquez went outside to Marin's car to bring up the other kilograms. Rodriquez again promised that he and Leiva would make full payment in a few days. Marin opened the trunk and gave two gym bags containing twenty-eight kilograms of flour to Rodriquez. FBI agents then arrested Rodriquez and Leiva.

On July 10 and 12, Rodriquez made telephone calls from the federal Metropolitan Correctional Center in Chicago to Silverio Montero, the owner of the apartment where he and Leiva had stayed before their arrest. During the July 12th conversation, Montero told Rodriquez that Rodriquez' wife "told me she had some," and said that there were "thirty" left. At trial and sentencing, the government argued that the "thirty" referred to the kilograms of cocaine that Leiva and Rodriquez had already distributed in Chicago before the July 8th transaction at issue here.

On November 28, 1989, Leiva, Rodriquez, Silverio Montero and Leonel Frau, another alleged co-conspirator, were charged in a four count superseding indictment with several drug related offenses. Count 1 charged all defendants with conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846; Count 2 charged the defendants with attempting to possess with intent to distribute approximately thirty kilograms of cocaine in violation of 21 U.S.C. § 846 and Count 3 charged them with possessing with intent to distribute 51.5 grams of cocaine in violation of 21 U.S.C. § 841. Count 4 charged Montero with making a false statement to the FBI on July 24, 1989.

At trial, Leiva and Rodriquez claimed that they were businessmen facing bankruptcy who had been entrapped by overzealous government agents. Rodriquez testified that he and Leiva had acted as middlemen for Castro, the government informant, and admitted collecting $145,000 for the purchase. He claimed, however, that he and Leiva decided on July 8 that they would not go through with the deal. Rodriquez claimed that they rejected the cocaine samples provided by Marin because they were trying to get out of the deal. Rodriquez also insisted that Montero's statement in the July 12th conversation that: "what's left is thirty," referred to a $30,000 business debt that Montero owed Rodriquez. The jury found Leiva and Rod-

riquez guilty on count 2 and not guilty on the other counts. This appeal followed.[1]

## II.

Leiva and Rodriquez first argue that they were not indicted or tried within the parameters of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Both were arrested on July 8, 1989. On August 4, 1989, upon a motion by the government, the district court ordered that thirty days be excluded, pursuant to 18 U.S.C. § 3161(h)(8)(A), from the time in which Rodriquez and Leiva were required to be indicted under the Speedy Trial Act. The court found that the exclusion sought was "reasonable on its face" because the government had issued numerous subpoenas for financial records which could not be returned within 30 days. Chief Judge Grady went on to note that it was unreasonable to expect the government to proceed on the basis of "insufficient evidence" before the subpoenas were returned. On September 5, 1989, the grand jury returned a three count indictment against the defendants.

■ Section 3161(b) of the Speedy Trial Act requires in most cases that an information or indictment charging a defendant with an offense must be filed within thirty days of his arrest. For defendants who plead not guilty, § 3161(c)(1) generally requires that trial commence within seventy days of the filing date of the indictment or information or the date of initial appearance, whichever occurs later. However, the Act allows the district court to exclude certain periods of delay from the time limits established by §§ 3161(b) and (c)(1). The provision at issue here, § 3161(h)(8)(A), commonly referred to as an "ends of justice" exclusion, allows the district judge to exclude time "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." We review a decision of the district court to grant an exclusion of time under

§ 3161(h)(8)(A) for an abuse of discretion. *United States v. Blandina,* 895 F.2d 293, 296 (7th Cir.1989); *United States v. Vega,* 860 F.2d 779, 787 (7th Cir.1988). This court will reverse a conviction on the ground that the district court erred in excluding time pursuant to § 3161(h)(8)(A) only upon a showing of "actual prejudice." *Blandina,* 895 F.2d at 296; *Vega,* 860 F.2d at 787. Leiva and Rodriquez claim that the district court failed to make the necessary findings in granting the motion for exclusion.

■ They are incorrect. Section 3161(h)(8)(B) sets forth a non-exclusive list of factors which the district court shall consider in deciding whether to grant an exclusion under § 3161(h)(8)(A). A review of the record demonstrates that the court's findings were relevant to at least two of those factors. The court's finding that there were thirty outstanding subpoenas for financial records demonstrates that it was "unreasonable to expect return and filing of the indictment within the period specified in section 3161(b)" under § 3161(h)(8)(B)(iii). The district court also implicitly recognized that denying the exclusion would deny the Assistant United States Attorney "reasonable time necessary for effective preparation" under § 3161(h)(8)(B)(iv).

The district court's findings were clearly adequate to meet the requirements of the Speedy Trial Act. Section 3161(h)(8)(B) requires the district court to consider all of the factors listed in that section, but the district court need not make explicit findings on all four factors. *See United States v. Cianciola,* 920 F.2d 1295, 1300 (6th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991) (affirming an "ends of justice" exclusion granted to allow defense counsel more time to prepare for trial); *Blandina,* 895 F.2d at 297 (affirming an exclusion granted based on two factors); *Vega,* 860 F.2d at 787 (affirming an exclusion granted based on two factors); *United States v. Thomas,* 774 F.2d 807,

---

**1.** Frau was found guilty on count 3 of the indictment for possession of 51.5 grams of cocaine, and was found not guilty on the other counts of the indictment. He did not appeal his convic-

tion or sentence. The district court acquitted Montero on count 4 of the indictment and the jury found him not guilty on all of the other counts of the indictment.

810 (7th Cir.1985), *cert. denied,* 475 U.S. 1024, 106 S.Ct. 1218, 89 L.Ed.2d 329 (1986) (affirming an "ends of justice" exclusion granted because the case was complex); *United States v. Studnicka,* 777 F.2d 652, 658 (11th Cir.1985) (affirming an exclusion granted because the defendant had not secured counsel). Although the appellants did not argue that the district court abused its discretion, we conclude that the district court did not abuse its discretion in excluding the 30 days from the pre-indictment period.

Leiva and Rodriquez also argue that the district court improperly excluded time on two occasions before trial. As we noted above, Leiva and Rodriquez were indicted on September 5, 1989. Trial commenced on December 18, 1989, 104 days after the initial indictment. The magistrate and the district court granted several motions for exclusion of time from the periods established by the Speedy Trial Act. On October 13, the district court excluded time from October 19 to November 17 pursuant to §§ 3161(h)(1) and 3161(h)(8)(A). On November 6, the district court excluded the period from November 2 to December 18, pursuant to §§ 3161(h)(8)(A) and (B)(ii) and (iv) to allow the government additional time to complete the process of translating tape recordings of the defendants. Several other rulings of the district court excluded additional time pursuant to § 3161(h)(1)(F), for the preparation and resolution of pretrial motions.

■ It is clear that all but 13 days between the indictment and trial were excludable for purposes of Speedy Trial Act computations. The appellants object only to two of the district court's rulings excluding time pursuant to § 3161(h)(8)(A), which resulted in the exclusion of 49 days. Even if they are correct that those exclusions were improper, the trial commenced within 62 non-excludable days of indictment, which is within the deadline of 70 days established

by § 3161(c)(1). Thus, we need not address this contention.[2]

### III.

Leiva argues that the district court erred in denying his pre-trial motion to sever the trial of count 4 of the indictment. As we noted above, count 4 charged Montero with making false statements to the FBI on July 24, 1989. In the statements at issue, Montero denied any association with Leiva, Rodriquez or Frau. The district court denied Leiva's motion for a severance on the ground that all four defendants were properly joined pursuant to Rule 8 of the Federal Rules of Criminal Procedure and that Leiva was not prejudiced by joinder. Leiva argues that the events which led to the charge in count 4 did not arise out of the same transaction or occurrence as the other counts of the indictment. Leiva notes that Montero made the allegedly false statement to the FBI after the other defendants had been arrested.

■ We reverse a district court's decision to deny a motion for severance under Rule 14 of the Federal Rules of Criminal Procedure only upon a showing of a clear abuse of discretion. *United States v. Caliendo,* 910 F.2d 429, 437 (7th Cir.1990); *United States v. Briscoe,* 896 F.2d 1476, 1506 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). A defendant who contests the district court's denial of a motion for severance "must show 'actual prejudice'—that is, the defendant must show that [he] could not possibly have a fair trial without a severance." *Caliendo,* 910 F.2d at 437; *United States v. Hogan,* 886 F.2d 1497, 1506 (7th Cir. 1989).

■ All four defendants were charged as co-conspirators; thus, under the law of this circuit there was a presumption that a joint trial of the defendants was proper. *Caliendo,* 910 F.2d at 437. Leiva argues

2. The government does not rely on the October 13 ruling in this appeal. We are convinced that the November 6 order of the district court excluding time to allow an official Spanish interpreter to verify the accuracy of the government's translations of tape recordings of the

defendants was entirely proper. We are also convinced that the other rulings of the district court excluding time for the preparation of pretrial motions pursuant to § 3161(h)(1)(F) were entirely proper.

that Montero's statements were made after the conspiracy terminated. He argues that those statements were inadmissible against him and, therefore, the district court erred in denying his motion for a severance. Additionally, Leiva claims that the introduction by the government of Montero's statements prejudiced him because the statements suggested that Montero's association with Leiva was so criminal that Montero lied about it.

■ We reject Leiva's argument that Montero's statements to the FBI were inadmissible against him. Paragraph 8 of count 1 of the indictment, the conspiracy charge, stated that: "it was further part of the conspiracy that Silverio Montero ... would attempt to conceal the existence of the conspiracy from the authorities by knowingly and willfully providing false information to agents of the Federal Bureau of Investigation." The district court found that Montero's statements were admissible because the government had established an adequate basis for the admission of co-conspirator statements against all defendants.

Leiva does not argue that the district court erred in determining that the government had proffered sufficient evidence that a conspiracy existed between defendants. Leiva has thus waived this argument. We agree with the government that the district court did not abuse its discretion in determining—by a preponderance of the evidence—that there was a conspiracy between the defendants, that Leiva and Montero were members of the conspiracy and that Montero's statements to the FBI were made during the course of and in furtherance of the conspiracy. *United States v. Hooks*, 848 F.2d 785, 794 (7th Cir.1988); *United States v. Kaden*, 819 F.2d 813, 818 (7th Cir.1987); *United States v. Robinson*, 956 F.2d 1388, 1394 (7th Cir. 1992); *see also Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Thus, Montero's statements would have been admissible against Leiva even if

count 4 had been severed. *See* FED.R.EVID. 801(d)(2)(E); *Hogan*, 886 F.2d at 1506 ("If the evidence would have been admissible on either count, the defendant cannot claim that he was prejudiced by joinder."). Thus, we hold that Leiva cannot establish actual prejudice.[3]

■ Leiva also contends that the evidence was insufficient to support his conviction. After reviewing the evidence in the light most favorable to the government, *United States v. McKinney*, 919 F.2d 405, 416 (7th Cir.1990), we are convinced that the evidence was adequate to show that Leiva attempted to purchase 30 kilograms of cocaine from Marin. In *United States v. Cea*, 914 F.2d 881 (7th Cir. 1990), we held that to prove an attempt, the government must establish that the defendant "acted with specific intent to commit the underlying offense, and in addition took a substantial step toward its completion." *Id.* at 887; *see also United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir.1985), *cert. denied*, 476 U.S. 1106, 106 S.Ct. 1951, 90 L.Ed.2d 360 (1986). Although Leiva was dissatisfied with the first two kilograms which he received from Marin, he requested that Marin bring up the other 28 kilograms for examination. He did not tell Marin that he did not want to purchase the cocaine or that he would not go through with the transaction. We hold that the evidence was adequate to show that Leiva intended to possess the cocaine with intent to distribute and that he took a substantial step toward the commission of the offense when he examined 2 kilograms of cocaine and asked to examine the other 28 kilograms.

## IV.

Alternatively, Leiva and Rodriquez challenge their sentences on the ground that the district judge erred twice in computing the amount of cocaine involved in the offense pursuant to Guideline § 2D1.4(a) of the Sentencing Guidelines. In addition, Leiva argues that the district judge abused

---

**3.** We note also that the jury did not consider count 4 when evaluating the evidence on the remaining counts because the district court ac-

quitted Montero on that count. That fact alone greatly minimizes any possible prejudice to Leiva.

her discretion in denying a two-level reduction for acceptance of responsibility pursuant to Guideline § 3E1.1(a).

■ First, Leiva and Rodriguez argue that the district judge erred in applying the Guidelines when she determined that the appellants attempted to purchase 30 kilograms of cocaine from the government informants. Guideline § 2D1.4(a) provides that: "If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of a conspiracy or attempt had been completed." United States Sentencing Commission, *Guidelines Manual*, (1991); *see also United States v. Baldwin*, 956 F.2d 643, 646 (7th Cir.1992) (discussing the application of Guideline §§ 1B1.3(a)(2) and 3D1.2(d)). The appellants agree that they attempted to purchase 2 kilograms of cocaine. They take issue with the inclusion of the 28 kilograms of flour in computing their base offense levels. They argue that because it was factually impossible to have actually possessed 30 kilograms of cocaine they cannot have attempted to purchase that amount of cocaine.

This argument continues to be without merit. In *United States v. White*, 888 F.2d 490 (7th Cir.1989), the defendant attempted to obtain two packages containing 302 grams of cocaine base but succeeded in possessing only 1.88 grams because the government removed the other grams from the containers and replaced them with sugar. *Id.* at 493. We held that 302 grams should have been included in determining the base offense level under Guideline § 2D1.4(a), and noted that: "[t]he Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable." *Id.* at 499. Thus, the district judge properly applied Guideline § 2D1.4(a) in counting the entire 30 kilograms towards the appellants' base offense levels.

■ Second, the appellants contend that the district judge erred in including an additional 30 kilograms in computing their base offense levels. The district judge found, based upon the presentence report,

that Leiva and Rodriquez had possessed 30 additional kilograms of cocaine, which they had distributed. This finding was based upon several facts. At trial, witnesses for the government testified that Leiva and Rodriquez promised to pay for the cocaine purchased from Marin from the proceeds of 30 kilograms which they had already distributed. Moreover, after Rodriquez was arrested and detained in the Metropolitan Correctional Center, he made a telephone call to Montero in which he referred to "thirty." In that conversation, Montero told Rodriquez that Rodriquez' wife "told me she had some," and said that there were 30 left. The government argued that these references established that Leiva and Rodriquez had previously distributed another 30 kilograms of cocaine in Chicago. At trial, however, Rodriquez testified that "thirty" referred to $30,000 which Montero owed him for several cars he had purchased. The district judge agreed with the government and additionally found that Rodriquez had committed perjury in so testifying and increased his offense level by two levels pursuant to Guideline § 3C1.1.

Leiva and Rodriquez argue that the district judge should not have included the additional 30 kilograms because the jury found them not guilty of the conspiracy charge. This argument has no merit because Leiva and Rodriquez were not charged with possession of the 30 additional kilograms. Although the conspiracy charge against the appellants was supported by the evidence that they had distributed the additional 30 kilograms, there was no double jeopardy problem. *See United States v. Fonner*, 920 F.2d 1330, 1333 (7th Cir.1990) (holding that sentencing "judges may consider prior misconduct despite the defendant's acquittal on charges arising out of that misconduct.").

Leiva and Rodriquez do not argue that the district judge committed clear error in determining that they possessed an additional 30 kilograms of cocaine. On this record, they could not establish clear error. *See Robinson*, 956 F.2d at 1398; *Baldwin*, 956 F.2d at 646.

Leiva argues that the district judge erred in denying him a two-level reduction in offense level for acceptance of responsibility. The presentence report prepared by the United States Probation Office recommended that Leiva receive the two-level reduction because in his interview with the probation officer he admitted participation in the offense and claimed that he deeply regretted his participation. The district judge disagreed with the recommendation of the presentence report and denied Leiva a two-level reduction. She found that Leiva had not affirmatively accepted responsibility in a timely manner, and that his statement to the probation officer was calculated to induce a finding of acceptance of responsibility.

We give great deference to a district judge's decision regarding a defendant's acceptance of responsibility under Guideline § 3E1.1(a) because " '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.' " *United States v. Franklin,* 902 F.2d 501, 505 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990) (quoting United States Sentencing Commission, *Guidelines Manual,* § 3E1.1 Application Note 5). Moreover, the defendant bears the burden of demonstrating that he is entitled to the reduction. *United States v. Camargo,* 908 F.2d 179, 185 (7th Cir.1990). Therefore, we will reverse a district judge's determination of this issue only if it is clearly erroneous. *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989).

Leiva admitted his participation in the offense only after a full trial in which he claimed that he was entrapped by government agents. At trial, he relied upon testimony by Rodriquez which the district judge found was perjurious. We cannot find that the district judge erred in finding that his admission of guilt was "motivated more by [his] concern to improve his potential disposition than by true remorse." *Franklin,* 902 F.2d at 506. The district judge did not err in concluding that Leiva failed to demonstrate that he was entitled to a two-level reduction for acceptance of responsibility.

V.

The other arguments raised by Leiva and Rodriquez are without merit.

Accordingly, we AFFIRM the convictions and sentences of Rafael Leiva and Jorge Rodriquez.