978 F.2d 1257
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Babatunde C. OLAJIDE, a/k/a Thomas M. Fennessey, Defendant-Appellant.
 No. 92-5089.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1992
Decided: November 4, 1992
As Amended Nov. 17, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore.
 Paul R. Kramer, for Appellant.
 Andrew Clayton White, Assistant United States Attorney, for Appellee.
 Richard D. Bennett, United States Attorney, for Appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL, WILKINS, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant, Babatunde Olajide, challenges his conviction and sentence for bank fraud, 18 U.S.C. § 1344. Finding no error, we affirm.
 
 
 2
 * In early June 1991, Olajide, an illegal alien from Nigeria living in Brooklyn, New York, asked Betty Lou Anthony of Baltimore, Maryland, to cash an insurance check for him. Anthony agreed. It was later discovered that this check was stolen from the Lexington Insurance Company (Lexington) in London, England, and drawn on Lexington's account at Chase Manhattan Bank, London.
 
 
 3
 Olajide informed Anthony that his name was Thomas Fennessey, that he resided in London and did not have a bank account in which to deposit the check. Unbeknownst to Anthony, Olajide lived in New York City since 1988 under his true name and maintained a checking account at a local Citibank branch.
 
 
 4
 A short time later, Olajide arrived in Baltimore with an insurance check for $89,712.56 made payable to Anthony. He explained that he had the check made payable to her in order to facilitate its negotiation. On June 14, 1991, Anthony deposited the check at Maryland National Bank and the funds were instantly credited to her account. On June 16 at Olajide's direction, Anthony withdrew the funds in the form of three cashiers' checks and currency. One check (Adebanjo check) was made payable to Olajide's girlfriend, Pamela Adebanjo, and another was made payable to Folake Coker (Folake check), Olajide's sister. The third check (Fennessey check) was made payable to Olajide in the name of Thomas Fennessey.
 
 
 5
 The Adebanjo check was deposited in Adebanjo's account, and she transferred the funds to Olajide's Citibank account. The Folake check was ultimately deposited in the London bank account of another of Olajide's sisters, Olusola Coker, and frozen. Olajide attempted to negotiate the Fennessey check at a Bowery Bank branch in New York. The bank would not accept the check because of Olajide's suspicious behavior, and the check has since disappeared.
 
 
 6
 Lexington discovered the theft when the $89,712.56 check was presented for payment at Chase Manhattan Bank in London. After Lexington reported to Chase Manhattan that the check was not valid, it notified local authorities as well as Maryland National Bank. Maryland National Bank contacted the F.B.I. and the F.B.I. approached Anthony. Anthony agreed to wear a recording device and meet with Olajide on June 30, 1991. During this meeting, Olajide told Anthony that he was involved in similar check cashing schemes in Washington D.C. and New York. At the conclusion of this meeting, Olajide was arrested.
 
 
 7
 At the time Olajide was arrested, he insisted that his name was Thomas Fennessey. Olajide appeared before an United States Magistrate and indicated that his name was Thomas Fennessey. It was not until the morning of trial that Olajide admitted his true identity. Pending trial, Olajide was incarcerated. During this incarceration, Olajide was visited by Olusola Coker and Adebanjo. Olusola Coker and Adebanjo employed the use of false identification cards made by James Coker, the defendant's brother, in an attempt to conceal the true identity of those visiting Olajide. During this visit, Olajide told Adebanjo that if she were questioned as to how she received the Adebanjo check, she should state that she received the check from someone other than him.
 
 
 8
 On July 11, 1991, a grand jury returned a two-count indictment charging Olajide with bank fraud, 18 U.S.C. § 1344, and making a false statement, 18 U.S.C. § 1001. On July 26, 1991, Olajide was arraigned and pleaded not guilty. He demanded a speedy trial. On that same day, counsel for Olajide wrote the district court and asked for an extension of time in which to file pretrial motions from August 12 to September 6. On August 26, 1991, Judge Garbis made a notation on the letter that Olajide's request for an extension of time was granted. In apparent response to the district court's actions, Olajide's counsel informed the district court on August 27 that he would not be filing any pretrial motions and asked that the defendant be tried as soon as possible.
 
 
 9
 On October 1, 1991, the government filed a motion to exclude time pursuant to the "ends of justice" exception to the seventy-day mandate of the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A). In support of its motion, the government argued that substantial delay was caused by Olajide's refusal to reveal his true identity and the need to engage in evidence gathering at the international level. The district court granted the government's request concluding that "the ends of justice served by the requested rescheduling outweigh the interests of the public and the defendant in a trial within 70 days of the date of the Defendant's initial appearance and justify a delay (at least until November 15, 1991) for the trial of this case." Joint Appendix (J.A.) at 42.
 
 
 10
 Olajide's trial began on October 28, 1991, ninety-four days after his arraignment. At the conclusion of the trial (November 6, 1991), the jury convicted Olajide on the bank fraud count.[1] On January 29, 1992, Olajide was sentenced to thirty months' imprisonment.
 
 
 11
 Olajide appeals.
 
 II
 
 12
 Olajide argues that he was not tried within the parameters of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. The Speedy Trial Act provides in pertinent part:
 
 
 13
 In any case in which a plea of not guilty is entered, the trial of the defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.
 
 
 14
 18 U.S.C. § 3161(c)(1). The Act allows the district court to exclude certain periods of delay from the time limits established by § 3161(c)(1), including § 3161(h)(8)(A) which permits the district court to exclude time from the Speedy Trial calculus if "the ends of justice served by [the exclusion] outweigh the best interest of the public and the defendant in a speedy trial." Section 3161(h)(8)(B) contains a non-exhaustive list of factors that the district court shall consider in excluding time on the basis that it serves the "ends of justice." The district court is required to consider all of these factors, but need not make explicit findings on all four factors. See United States v. Leiva, 959 F.2d 637, 640 (7th Cir. 1992); United States v. Cianciola, 920 F.2d 1295, 1300 (6th Cir. 1990), cert. denied, 111 S. Ct. 2830 (1991).
 
 
 15
 The enumerated factors that the district court must consider in determining whether the ends of justice served by the exclusion of time outweigh the best interests of the public and the defendant in a speedy trial are:
 
 
 16
 (i) whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
 
 
 17
 (ii) whether the case is so unusual or complex; due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
 
 
 18
 (iii) whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified by § 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.
 
 
 19
 (iv) whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably delay the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.
 
 
 20
 No exclusion under this section can be granted because of the lack of diligent preparation on the part of the government. 18 U.S.C. § 3161(h)(8)(C). Finally, the defendant must establish prejudice from the decision to grant the exclusion. Leiva, 959 F.2d at 640; Cianciola, 920 F.2d at 1298.
 
 
 21
 Our review of the district court's decision to exclude time under § 3161(h)(8)(A) is under the abuse of discretion standard. Leiva, 959 F.2d at 640; United States v. Blandina, 895 F.2d 293, 296 (7th Cir. 1989). When it granted the government's motion to exclude time from the Speedy Trial Act under the "ends of justice" exception, 18 U.S.C. § 3161(h)(8)(A), the district court observed:
 
 
 22
 Here the Government notes several unusual circumstances which require additional time for the Government to be ready for trial. First of all, there is substantial doubt as to the identity of the Defendant. The Defendant insists that he is Thomas Fennessey of New York and apparently utilized this identity in regard to many of the incidents which will be at issue at trial. The Government advises that it has evidence which will establish that this is a false identity and that the Defendant is a person speaking with a Nigerian accent who has recently lived in England. The need to untangle this mystery provides one reason, perhaps sufficient unto itself, for the Government to have an additional month or two to take the case to trial. If the defendant, by virtue of the use of a false identity, can take advantage of a delay in an investigation so as to force the Government to trial prematurely, there is the potential for a miscarriage of justice.
 
 
 23
 In addition to the unusual issue of the Defendant's identity, the case presents a need for the Government to engage in international evidence gathering on an expedited basis. The case involves a check allegedly stolen from an English insurance company and brought to this country. This offense is currently the subject of internal corporate investigations as well as separate investigations being conducted by local and Federal law enforcement personnel in London. Because of the problems inherent in dealing with international authorities, foreign corporations and foreign disclosure rules, documentary discovery and the Government's preparation for trial in this case has been hindered and delayed. There is nothing to indicate a lack of diligence on the part of the Government.
 
 
 24
 Insofar as complexity is concerned, as Defendant notes, except for the international aspects the case is not a particularly unusual or complex one. Hence, it is possible (although the Court is not so finding) that the complexity alone did not warrant much, if any, continuance. Be that as it may, the ground specified in 18 U.S.C. § 3161(h)(8)(B)(iv) (need for additional time for effective preparation) is clearly presented. The Government should not, and will not, be forced to move forward on this case with the same speed that would be required were this international case purely a local matter.
 
 
 25
 J.A. at 40-42.
 
 
 26
 We find nothing in this record to support Olajide's assertion that the district court abused its discretion in granting the exclusion. In light of the government's unchallenged due diligence in pursuing a prompt prosecution of Olajide, Olajide's failure to identify himself, coupled with the overwhelming evidence that the government encountered international "red tape" in investigating the case, the district court had before it more than ample justification to exclude time pursuant to the "ends of justice." Finally, even assuming the district court abused its discretion in excluding time, the record is devoid of any showing of prejudice. As counsel for Olajide conceded at argument, the only potential prejudice flowing from the district court's decision to exclude time under Olajide's theory of the case was that he was held without bond twenty-four days more than the Speedy Trial Act's seventy-day mandate.[2] This argument, if accepted, is insufficient to support a finding of prejudice. Accordingly, we hold that the rights accorded Olajide by the Speedy Trial Act were not violated by the district court's decision to exclude time pursuant to § 3161(h)(8)(A).[3]
 
 III
 
 27
 Olajide also argues that the district court erred in enhancing his base offense level two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The district court's enhancement was based on two alternative grounds. We need only discuss one for disposition of this claim. The district court held that the § 3C1.1 enhancement was appropriate because Olajide provided a false name at the time of his arrest, concealed his true identity until the day of trial, and law enforcement personnel expended considerable resources in attempting to establish Olajide's true identity. Thus, the district court enhanced Olajide's base offense level for obstruction of justice, finding that Olajide affirmatively furnished material falsehoods to the arresting officer and the court.
 
 U.S.S.G. § 3C1.1 provides:
 
 28
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during investigation, prosecution, or sentencing for the instant offense, increase by 2 levels.
 
 
 29
 The Commentary to this section provides a non-exhaustive list of conduct falling within the realm of this section, including "providing materially false information to a judge or magistrate" and "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (n.3(f) & (g)). "A wide range of conduct falls within the parameters of this section." United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991).
 
 
 30
 This court has previously upheld an obstruction of justice enhancement under § 3C1.1 based upon a defendant's affirmative act of providing a false name at the time of arrest and later to a pretrial services officer. United States v. Saintil, 910 F.2d 1231 (4th Cir. 1990). In Saintil, the defendant was arrested along with five other codefendants while driving a car containing cocaine base and a gun. Upon being questioned by police officers, Saintil informed the officers that his name was Michelin. Saintil maintained that his name was Michelin during an interview with a pretrial services officer before finally admitting his true identity during his arraignment before an United States Magistrate later that day. Saintil subsequently pleaded guilty. At sentencing, the district court enhanced Saintil's base offense level because of the continued use of the alias. Id. at 1231-32. Despite Saintil's claim that a brief use of an alias followed by a truthful representation does not amount to obstruction of justice under § 3C1.1, we upheld the enhancement on the basis of Saintil's misrepresentation to the arresting officer and pretrial services officer.
 
 
 31
 Our result is dictated by Saintil. As in Saintil, Olajide initially misrepresented his true identity to the arresting officer. However, on the day of his arrest, Santil disclosed his true identity at his arraignment before an United States Magistrate. Conversely, Olajide concealed his true identity at arraignment and continued the misrepresentation until the day of trial, despite awareness of the substantial doubts that the F.B.I. harbored as to his true identity. Thus, under Saintil, the enhancement was proper. Our conclusion here is consistent with other circuits that have upheld an enhancement for similar conduct. See United States v. Rogers, 917 F.2d 165 (5th Cir. 1990) (misrepresentation to law enforcement), cert. denied, 111 S. Ct. 1318 (1991); United States v. Irabor, 894 F.2d 554 (2d Cir. 1990) (false identification to investigating authorities); United States v. Brett, 872 F.2d 1365, 1372 (8th Cir.) (alias at the time of arrest), cert. denied, 110 S. Ct. 322 (1989).[4]
 
 IV
 
 32
 For the reasons stated herein, Olajide's conviction and sentence is affirmed.
 
 AFFIRMED
 
 
 [1]
 The false statement count was dismissed before trial
 
 
 [2]
 Olajide was brought to trial on October 28, 1991, ninety-four days after his arraignment
 
 
 [3]
 Notwithstanding the timeliness of his trial under the "ends of justice" exception, we also note that Olajide's October 28 trial date fell within the seventy-day mandate of the Speedy Trial Act because the time (twentyseven days) between the granting of the letter-motion for an extension of time in which to file pretrial motions (dated July 26, but received by the district court on July 31) and its subsequent withdrawal by letter of August 27 was excludable under 18 U.S.C. § 3161(h)(1)(F). This would have pushed the speedy trial time from October 4 (seventy days from Olajide's July 26 arraignment) to October 31. Thus, as extended by the twenty-seven days, Olajide's trial was well within the Speedy Trial Act's seventy-day mandate
 
 
 [4]
 Olajide argues that the enhancement was not appropriate because his false statements concerning his identity were attempts to assert his fifth amendment rights. We find this argument to be wholly without merit. As the Seventh Circuit noted in rejecting a similar argument: "Silence, rather than deception, is the manner in which the Supreme Court has chosen to allow uncounseled defendants to exercise their right against self-incrimination." United States v. Ojo, 916 F.2d 388, 393 n.9 (7th Cir. 1990) (citing Miranda v. Arizona, 384 U.S. 436, 467 (1966))