

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2004

# USA v. Earp

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3783

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"USA v. Earp" (2004). *2004 Decisions.* Paper 1114.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1114

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 02-3783

UNITED STATES OF AMERICA

v.

STACY R. EARP, JR.,
Appellant

On Appeal From the District Court of the Virgin Islands
(D.C. Civil Action No. 02-cr-00042)
District Judge:  Honorable Thomas K. Moore

Argued December 8, 2003

BEFORE:  NYGAARD, BECKER and STAPLETON, Circuit Judges

(Opinion Filed: January 6, 2004)

Judith L. Bourne (Argued)
P.O. Box 6458
34B-35 Norre Gade
Charlotte Amalie, St. Thomas, USVI  00804
 Attorney for Appellant

John E. Stevens
Office of the United States Atttorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas, USVI 00802-6924
  and
David M. Nissan
United States Attorney
Bruce Z. Marshack (Argued)
Office of the United States Attorney
1108 King Street, Suite 201
Christiansted, USVI 00820
  Attorneys for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Defendant Stacy R. Earp ("Earp") appeals his conviction and sentence for attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (2002), and attempted importation of cocaine into the Customs Territory of the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1), and 963 (2002). Earp argues that the evidence presented by the government at trial was not sufficient to support his conviction on either charge. Earp also argues that a statement made to the jury by the government during its rebuttal closing argument resulted in a violation of his right to due process. For the reasons set forth below, we will affirm the

2

conviction.

## I.          Facts and Procedural History

On March 8, 2002, at approximately 11:35 a.m., Stacy R. Earp entered Cyril E. King Airport at St. Thomas in the U.S. Virgin Islands. His flight to North Carolina was scheduled to depart later that day, at approximately 4:20 p.m. While passing through the pre-flight U.S. Customs inspection, Earp aroused the suspicion of his interviewer, U.S. Customs Inspector Christopher Rice. Inspector Rice testified as to the reasons for his suspicion. Earp could not, at first, recall when he arrived in St. Thomas, but then stated that he had arrived the previous day. Additionally, on the subject of his sudden departure, Earp told Inspector Rice that he had intended to stay in St. Thomas until March 28, 2002, but was leaving after one day because he had learned the night before that his father had unexpectedly died. Furthermore, instead of returning to North Carolina on the return portion of his original round-trip American Airlines ticket, the ticket that Earp presented to Inspector Rice, and upon which he was flying that day, was a U.S. Airways round-trip ticket that had been purchased on March 5, 2002 – before his father was supposed to have died.[1]

His suspicions aroused, Inspector Rice requested the assistance of U.S. Customs Inspector Ralph Da Sant. The two began an inspection of Earp's luggage, and

---

[1]Mr. Earp claimed to have lost the return portion of his original American Airlines ticket; however, that portion of his ticket was later found in a second bag that Mr. Earp had checked before proceeding through U.S. Customs.

3

found that Earp's green carry-on bag was brand new and nearly empty except for its original packing material and warranty card. Inspectors Rice and Da Sant then requested a pat down of Appellant, but found nothing. Still suspicious, the inspectors allowed Earp to pass and maintained surveillance on him. At approximately 12:29 p.m., video surveillance showed Earp proceeding through the airport security checkpoint to the food court area, where he sat at a bar.

By the time Earp entered this passenger area, another man, later identified as Shawn Callwood, had already passed through U.S. Customs. Callwood was brought under surveillance because he was dressed similarly to Earp and both individuals had been wearing a "fisherman's type" hat. Callwood was also scheduled to depart St. Thomas on the same flight as Earp. At 12:00 p.m., video surveillance showed Callwood entering the airport restroom with one bag. When Callwood emerged from the restroom at 12:17 p.m., he had an additional bag that appeared to be identical to the green carry-on bag that Earp was carrying.

At 12:57 p.m., forty minutes after Callwood emerged from the restroom and twenty-eight minutes after Earp had sat at the bar, Callwood was observed walking up to the bar at which Earp was sitting. At that point, Callwood had the green bag with him that matched Earp's green carry-on bag. For approximately thirty-five seconds, the video surveillance showed that Callwood may have been speaking to Earp. The video, however, did not show Earp saying anything to Callwood. At 12:58 p.m., Earp stood,

4

walked away from Callwood, and went into the restroom for approximately two minutes. Upon leaving the restroom, Mr. Earp sat in the departure area for his flight.

At 1:08 p.m., Callwood was approached by U.S. Customs inspectors and escorted to a less public area where his bags were searched. After finding what appeared to be a controlled substance, Callwood was placed under arrest. Callwood's original bag was later found to contain fourteen kilograms of cocaine. Callwood's green bag, which matched the empty green bag carried by Mr. Earp, was found to contain thirteen kilograms of cocaine. The U.S. Customs inspectors then returned to the departure area and escorted Earp to a secure area. An inspection of Earp's luggage turned up no contraband. Earp was nevertheless placed under arrest, advised of his *Miranda* rights, and held in a detention area. He waived his *Miranda* rights, however, and volunteered a statement admitting his connection to the cocaine possessed by Callwood.

According to his written statement, Earp is a beautician from North Carolina. On March 7, 2002, one of his customers offered to pay him $4,000[2] if he would travel to the U.S. Virgin Islands to transport a bag containing cocaine into North Carolina. Earp agreed to traffic the cocaine. He was given a round-trip American Airlines ticket for a flight scheduled to depart that evening. According to the plan, Earp would be met that night at the airport and taken to a hotel, where he would be given $150 to pay for a room.

---

[2]Earp later testified that he had actually been promised only $2,500 for delivering the cocaine. He stated that he had written "$4,000" at the time of his detention because he felt embarrassed that he had agreed to participate for such a low sum.

In his room, he would find the green carry-on bag, and at 11:00 a.m. the next morning, he would be driven to the airport. After passing through U.S. Customs, Earp was to enter the restroom, where he would switch his empty green bag for an identical bag containing the cocaine. Upon arriving in North Carolina, he would be relieved of the bag and paid the $4,000.

Subsequently, a two-count indictment was brought against Earp. Count One charged him with attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged him with attempted importation of cocaine into the Customs Territory of the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1), and 963.

A jury trial was held on June 13, 2002, at which Earp took the witness stand to testify in his own defense. He told the jury that he was in need of money to obtain his hairstylist license from the State of North Carolina and that he was behind on his rent. Faced with the prospect of "quick cash," he told the jury that he originally agreed to carry out the plan. Earp testified that by the next morning, however, he had decided not to pick up the drugs. He explained that the only way he thought he could return home was to go to the airport appearing as if he were complying with his instructions as much as possible. Instead of picking up the drugs, however, he testified that he was simply going to get on his plane when it boarded. Although his instructions called for him to enter the restroom and switch his bag as soon as he passed through Customs, he told the jury, he instead

6

went to hide at the bar and read a book until his plane boarded. He also testified that after his U.S. Customs interview and pat-down, he believed that he was being watched by the airport cameras. He also believed that someone involved in the drug scheme could have been watching him as well.

With respect to the interaction between Earp and Callwood at 12:57 p.m., Earp testified that he did not know who Callwood was, that he had not spoken with Callwood, and that Callwood had simply ordered a beer from the bartender. He told the jury that, at that point, he went to the restroom because he genuinely had to use the restroom and when he emerged two minutes later, he had changed his mind about hiding. He stated that he believed that the person who came up to him at the bar, Callwood, could have been involved in the drug scheme. Instead of returning to the bar, he went to sit in the boarding area for his flight because, he testified, he wanted to be out in the open. According to Earp, he wanted be seen by the cameras so that no one could later say that he was participating in any illegal activity.

When asked at trial why his written statement did not mention that he had decided not to obtain the cocaine, Earp explained that he simply wrote what he was asked to write because he thought he would then be allowed to return to North Carolina. At the time, he testified, he believed that he was helping the investigators by telling them the truth. He also told the jury that he believed he was exonerating himself because he believed that the fact that no drugs were found in his possession meant that he could not

7

be charged with a crime.

Defense counsel moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure both after the government's case-in-chief and after the close of all evidence. Defense counsel's argument was that all of Earp's actions were preparatory in nature and did not constitute the required substantial step towards the commission of the offenses for which he was charged. The government argued that the crime of attempt was completed at the time that Earp took the flight to St. Thomas. The District Court denied defense counsel's motion, stating that "clearly a substantial step was taken" but that step was more than just traveling to St. Thomas. App. at D-130.

After closing arguments,[3] the jury returned a verdict of guilty on both counts. The District Court entered a judgment and commitment order on September 30, 2002 and Earp filed a notice of appeal that same day.

## II. Jurisdiction

The District Court had jurisdiction over this case under 48 U.S.C. § 1612 (2002) and 18 U.S.C. § 3231 (2002). We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(3) (2002) to review the final judgment of the District Court of the Virgin Islands.

---

[3]As will be discussed below, Earp's second argument on appeal is based upon a comment made by the government during its rebuttal closing argument. At a sidebar, defense counsel objected to the government's comment but the District Court declined to give a curative instruction. App. at D-244.

**III.     Discussion**

**A.     Sufficiency of the Evidence**

Earp's first argument on appeal is that the District Court erred in denying his Rule 29 motion for a judgment of acquittal. Earp claims that the government failed to introduce any evidence that he took a "substantial step" toward the commission of a substantive offense. In deciding whether a jury verdict is based on legally sufficient evidence, we apply a "particularly deferential" standard of review. *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998), *cert. denied*, 525 U.S. 1085 (1999)). The verdict must be sustained if there is substantial evidence to support it. *Burks v. United States*, 437 U.S. 1, 17 (1978); *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000). "It is not our role to weigh the evidence or to determine the credibility of the witnesses." *Cothran*, 286 F.3d at 175. "We must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *Id.*

Earp was convicted of an attempted violation of 21 U.S.C. §§ 841(a)(1), 952(a), and 960(b)(1). The federal attempt statutes with respect to these violations are codified at 21 U.S.C. §§ 846 and 963, which identically provide that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the

9

object of the attempt or conspiracy." These two provisions, originally enacted as §§ 406 and 1013 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (Oct. 27, 1970), do not contain a definition of "attempt." *See United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985). Nevertheless, we recognized in *United States v. Everett*, 700 F.2d 900 (3d Cir. 1983), that the word "attempt" is a common law term, and when Congress uses a common law term in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given that term at common law. *Id.* at 903-04 (citing *Morissette v. United States*, 342 U.S. 246, 263, 72 S. Ct. 240, 249, 96 L. Ed. 288 (1952)).[4]

Accordingly, in applying 21 U.S.C. § 846, we have relied upon the "well-settled principles of the law of attempts" that are embodied in Model Penal Code § 5.01 (1985). *See United States v. Cruz-Jiminez*, 977 F.2d 95, 102 & n.10 (3d Cir. 1992) (citing *United States v. Kikumura*, 918 F.2d 1084, 1108 (3d Cir. 1990)). In *Cruz-Jiminez*, we noted that the Model Penal Code formulation of attempt is consistent with our own caselaw, *id.* at 102 (citing *Everett*, 700 F.2d at 908), and has been adopted by a majority of federal courts. *Id.* at 102 n.8 (citing *United States v. Stone*, 960 F.2d 426, 433 (5th Cir. 1992); *United States v. Leiva*, 959 F.2d 637, 642 (7th Cir. 1992); *United States v. Watson*,

---

[4]We also recognized, however, that the generally accepted common law definition of a term will not be imposed "if there are 'grounds for inferring an affirmative instruction from Congress' to define it otherwise." *Everett*, 700 F.2d at 904 (reviewing the legislative history of § 846 to discern whether Congress intended to eliminate an impossibility defense) (citing *Morissette*, 342 U.S. at 273, 72 S. Ct. at 255).

953 F.2d 406, 408 (8th Cir. 1992); *United States v. Leopard*, 936 F.2d 1138, 1140 (10th Cir. 1991); *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989); *United States v. Dworken*, 855 F.2d 12, 17 (1st Cir. 1988); *United States v. Delvecchio*, 816 F.2d 859, 861 (2d Cir. 1987)). We also found that the Model Penal Code formulation "is logical and in conformity with the purposes of the criminal law to require corroborative behavior." *Cruz-Jiminez*, 977 F.2d at 102 n.10 (quoting *Everett,* 700 F.2d at 908-09). Subsequently, we adopted the Model Penal Code formulation in contexts other than drug trafficking. *See, e.g.*, *United States v. Hsu*, 155 F.3d 189, 202-03 (3d Cir. 1998) (attempted misappropriation of trade secrets, under 18 U.S.C. § 1832(a)(4)); *United States v. Cicco*, 10 F.3d 980, 984-85 (3d Cir. 1994) (attempted coercion of municipal employees into performing services for a political party as a condition of employment, under 18 U.S.C. § 601(a)). We will therefore apply the Model Penal Code formulation of attempt to this case as well.

Under the Model Penal Code:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

*Cruz-Jiminez*, 977 F.2d at 102 (quoting *Dworken*, 855 F.2d at 16-17; Model Penal Code § 5.01(1)(c) (1985)). This test requires the government to prove: "(1) the intent, or kind of culpability otherwise required, to engage in the criminal conduct; and (2) conduct

11

constituting a 'substantial step' toward commission of the substantive offense that

strongly corroborates the criminal intent." *Id.* at 101-02 & n.8. With respect to evidence

of a defendant's intent, we have noted that:

> [I]f substantial steps are the only proof of the defendant's criminal intent,
> then those steps must unequivocally evidence such an intent; "that is, it
> must be clear that there was a criminal design and that the intent was *not* to
> commit some non-criminal act." *Dworken*, 855 F.2d at 17. If, however,
> there is evidence of criminal intent independent of that demonstrated by the
> defendant's substantial steps in furtherance of his criminal design, "the
> substantial steps do not themselves need to be unequivocally indicative of
> criminal intent – they must merely corroborate criminal intent." *Id.* at 17
> n.3 (citing Model Penal Code Part 1, § 5.01, cmt. at 330-31).

*Cruz-Jiminez*, 977 F.2d at 102. As for the "substantial step" element, "[f]or a defendant

to have taken a 'substantial step,' he must have engaged in more than 'mere preparation,'

but may have stopped short of 'the last act necessary' for the actual commission of the

substantive crime." *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003) (quoting

*United States v. Rosa*, 11 F.3d 315, 337 (2d Cir.1993)). "There is no clear line between

preparation and attempt." *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996) (citing

*United States v. Coplon*, 185 F.2d 629, 633 (2d Cir. 1950) (Learned Hand, C.J.) ("The

decisions are too numerous to cite and would not help much anyway, for there is, and

obviously can be, no definite line [between preparation and attempt].")). "Whether

conduct represents a substantial step depends on the 'surrounding factual circumstances'

and, therefore, such determinations are necessarily fact specific." *Id.* (quoting *United

States v. Gaines*, 969 F.2d 692, 689 (8th Cir. 1992); *see also United States v. Crowley*,

12

318 F.3d 401, 408 (2d Cir. 2003) ("Determining whether particular conduct constitutes a substantial step is 'so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts.'" (quoting *United States v. Manley*, 632 F.2d 978, 988 (2d Cir.1980)).

In this case, the District Court's charge to the jury was consistent with the law of attempt. The District Court first instructed that the government was required to prove beyond a reasonable doubt that Earp had intended to commit each substantive offense. App. at D-228, D-231. The District Court went on to instruct on the meaning of "substantial step," stating that:

> [T]he government must prove beyond a reasonable doubt that the mental processes of this defendant passed and went beyond the stage of just thinking about the crime to actually intending to commit the crime, and that the physical process of the defendant, what he was doing, what he did, went beyond and passed from the stage of mere preparation to some firm, clear and undeniable action to accomplish the intent of the offense.

App. at D-234. Based upon this correct statement of the law of attempt, we hold that sufficient evidence was presented for a rational juror to find beyond a reasonable doubt that Earp attempted to commit each of the substantive offenses as charged.

With respect to the intent element, the jury was presented with Earp's written statement confessing to his participation in a criminal design to take possession of cocaine and to import such cocaine into the Customs Territory of the United States. Viewed in the light most favorable to the government, this statement provided independent evidence of Earp's criminal intent. *See Cruz-Jiminez*, 977 F.2d at 102 n.11

13

("[A] defendant's confession could furnish evidence of criminal intent independent from that demonstrated by any substantial steps taken in furtherance of the crime."). Despite Earp's testimony that he had decided not to go through with the plan, a rational juror could have believed that any abandonment of the criminal design occurred, if at all, only after Earp passed through his U.S. Customs inspection and concluded that he was under government surveillance. Earp's own testimony revealed that he believed he aroused suspicion during the inspection and that he would be under surveillance thereafter. The question, therefore, is whether Earp's conduct up to that point constituted a substantial step that corroborated his criminal intent. We find that sufficient evidence was presented for a rational juror to find beyond a reasonable doubt that it did.

In accordance with the confessed plan, Earp: (1) accepted airline tickets worth a substantial amount of money, (2) traveled to the U.S. Virgin Islands, (3) allowed himself to be driven to a hotel by one or more conspirators, (4) accepted $150.00 to pay for the hotel room, (5) accepted a green carry-on bag to be used in the scheme, (6) allowed himself to be driven back to the airport on March 8, 2002 by one or more conspirators with the carry-on bag, (7) entered the airport at the agreed-upon time, and (8) gave deceitful answers to U.S. Customs Inspectors in order to reach the airport's passenger area. We need not determine which of these actions were merely preparatory and which actions constituted substantial steps. Rather, we hold that a rational juror, reviewing these actions and weighing all of the relevant facts, could have found,

14

consistent with the District Court's instruction, that Earp's conduct went beyond the stage of mere preparation. At the very least, giving deceitful answers to U.S. Customs inspectors in order to reach the area in which the cocaine would be obtained may be deemed a substantial step that strongly corroborated the independent evidence of criminal intent. Accordingly, we reject Earp's sufficiency of the evidence argument.

## B.    Due Process

Earp's second argument relates to a statement made by the prosecution during its rebuttal argument to the jury. The prosecution stated, with respect to Earp's thirty-five second encounter with Callwood at the airport bar:

> Isn't it more likely that Mr. Earp was letting him know I got your bag buddy. Mr. Earp was waiting for the right time to get that bag with the drugs. Now, he had a lot of time to do that. Remember this is occurring around 1 o'clock that night [sic], he wasn't leaving until 4:20.

App. at D215. At trial, defense counsel objected to this statement, arguing that it improperly asked the jury to speculate as to what Earp and Callwood may have done. The District Court did not give a curative instruction. Earp now argues on appeal that the prosecution's statement violated his fundamental right to due process because it "was a clear invitation to the jury to consider as evidence of his guilt whether Mr. Earp would have had the opportunity to complete the crime." Appellant's Br. at 15. The issue before the jury, Earp argues, was whether he had taken substantial steps towards commission of the offense, "not whether he would have had the opportunity to do so within the next few hours." *Id.* at 15-16. We reject this argument.

15

"The relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Here, we find no impropriety in the prosecution's remarks, much less misconduct of constitutional dimensions. As a factual matter, Earp is inaccurate in stating that the prosecution asked the jury to base its verdict upon an opportunity that Earp had to obtain the cocaine at some later point in time. Rather, the prosecution's statement was made in the context of discussing Earp's credibility. When the prosecution made the remarks at issue, it was in the process of arguing that the jury should not believe Earp's testimony with respect to his thirty-five second encounter with Callwood at the airport bar. Earp had testified that there was no exchange of words between the two men and that Callwood had simply ordered a beer at the bar. The prosecution argued that given the circumstances, it was more likely that Earp and Callwood were discussing how and when to exchange their green carry-on bags. The remarks also appear to have been part of a broader prosecution argument that the jury should not believe Earp's testimony that he had decided not to go through with his plan before returning to the airport on March 8, 2002. It was not improper for the prosecution to ask the jury to draw a reasonable inference from the evidence in order to find that Earp was not a credible witness. *See United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001) ("It is permissible for a prosecutor [in his closing arguments] to interpret the

16

evidence as indicating that the defendant is not telling the truth.").

We also note that any possible suggestion that the jury could find Earp guilty because of what he may have done before his plane boarded was dispelled by the District Court's instructions to the jury. At trial, the District Court clearly instructed the jury as to what it would be required to find in order to return a conviction. At no point was the jury allowed to consider Earp's possible future conduct as an element of the attempt offenses. Accordingly, Earp's due process argument is without merit.

**III.        Conclusion**

For the reasons stated above, we will affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing not precedential opinion.

/s/ Walter K. Stapleton
Circuit Judge